302 So.2d 354 (1974)
Wesley (NMI) REED, Plaintiff-Appellee,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellant.
No. 4735.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1974.
*355 Hall, Raggio, Farrar, Cappel & Chozen, by Richard A. Chozen, Lake Charles, for defendant-appellant.
Nathan A. Cormie, Lake Charles, for plaintiff-appellee.
Before FRUGÉ, HOOD and DOMENGEAUX, JJ.
HOOD, Judge.
Wesley Reed instituted this suit against United States Fidelity & Guaranty Company to recover amounts alleged to be due him under a homeowners insurance policy issued by defendant. Plaintiff alleges as the basis for this claim that his insured home was damaged by a windstorm. The case was tried by jury, with the result that a verdict was rendered in favor of plaintiff for most of the damages claimed, plus penalties and attorney's fees. The trial court rendered judgment substantially in accordance with that verdict, awarding plaintiff $3,150.00 plus 12 percent penalties and $1,083.00 as attorney's fees. Defendant has appealed solely from that part of the judgment which awards penalties and attorney's fees.
The issue presented is whether defendant's failure to pay plaintiff's claim prior to suit was arbitrary, capricious or without probable cause, entitling plaintiff to recover penalties and attorney's fees under LSA-R.S. 22:658.
Plaintiff alleges that his home in Lake Charles was damaged on February 10, 1973, by "violent winds, scattered tornadoes and heavy rain." He testified that the wind damaged the roof of his home, and that as the result of that roof damage rain seeped through and caused additional damage to the ceilings in several rooms of the dwelling. At the time of this alleged wind storm there was in effect a home-owners insurance policy, issued by defendant and covering plaintiff's home, which contained the following provision:
"This policy insures against direct loss to the property covered by the following perils as defined and limited herein:
1. Fire or lightning.
2. Removal, ....
3. Windstorm or hail, excluding loss:
a. ....
b. To the interior of the building, or the property covered therein caused by rain, snow, sand or dust, all whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then this Company shall be liable for loss to the interior of *356 the building or the property covered therein as may be caused by rain, snow, sand or dust, entering the building through openings in the roof or walls made by direct action of wind or hail;...." (Emphasis added).
It is apparent from that provision of the policy that plaintiff cannot recover for rain damage to the interior of his home, unless he shows (1) that there first was actual damage to the roof caused by the direct force of the wind, and (2) that the damage to the interior was caused by rain entering the building through openings in the roof made by direct action of the wind.
Plaintiff reported the damage to defendant shortly after it allegedly occurred, and that report was received by defendant's Lake Charles claims office on February 28, 1973. Travis Vickers, the adjuster who was in charge of defendant's Lake Charles claims office, immediately assigned the claim to General Adjustment Bureau, in Lake Charles, to inspect the dwelling and to submit an estimate of the damages. The house was inspected by Don Perkins, an inspector employed by the Adjustment Bureau.
General Adjustment Bureau reported to defendant, through its claims office, on March 12, 1973, that damages to plaintiff's home were estimated at the sum of $274.00. Vickers testified that since the estimate was relatively small, he immediately authorized payment of the sum of $174.00 to plaintiff, that being the full amount of estimated damages less the $100.00 deductible provided in the policy, even though no determination was made as to whether the damage was caused by wind storm. An employee in the claims office advised plaintiff by telephone that the sum of $174.00 would be paid to him in settlement of his claim, but plaintiff informed that employee that he would not accept payment of that amount.
Vickers then asked General Adjustment Bureau for a re-inspection of the loss. In compliance with that request, Joseph Cagnina, an adjuster employed by General Adjustment Bureau, inspected plaintiff's home during the latter part of March or the first part of April, 1973, and while he was on top of the building he took four photographs of the roof. Cagnina found a "buckle" on the roof, but he felt that it was caused by "just normal contraction and expansion from the heat of the sun and the cold weather." He concluded that there had been no wind damage to the house, and he thereupon submitted a written report that he found no damage to the roof of plaintiff's home that was caused by wind. He attached photographs of the roof to that report, and the report was forwarded to defendant. Since he found no damage caused by wind, and thus no loss covered in the policy issued by defendant, he did not attempt to estimate the costs of making any repairs to the dwelling.
On April 14, 1973, plaintiff submitted to defendant an estimate showing that in plaintiff's opinion it would cost $2,734.24 to repair the damage allegedly caused by a wind storm. Reed was engaged in the business of doing interior work in houses, so he made the above estimate himself, feeling that he was qualified by experience to do so. After submitting that estimate, plaintiff engaged a lawyer to assist him in collecting the amount he felt was due him under the policy.
A law partner of the attorney engaged by plaintiff entered into negotiations with Vickers, and an agreement was reached between that attorney and Vickers that the claim should be settled for the sum of $650.00. Defendant thereupon issued its check payable to plaintiff for that amount. The attorney who conducted the negotiations for plaintiff presented the check to him, but plaintiff refused to accept that amount as settlement of the claim, and the check was returned to defendant. Plaintiff *357 thereupon engaged his present attorney, and this suit was instituted on October 4, 1973.
The only information relating to the cause of the alleged damage which defendant had obtained up to the time this suit was filed was the estimate in the amount of $2,734.24 compiled and submitted by plaintiff himself in which he presumably stated that the damage was caused by wind storm, and the reports of the two inspectors for General Adjustment Bureau. One of those inspectors reported that the cost of making all needed repairs, without determining whether they were caused by wind storm, was $274.00, and defendant promptly offered to pay that amount to plaintiff, less the deductible, but the offer was refused. The second inspector found that there was no wind damage at all to the house, and thus that there was no coverage under the policy. Defendant nevertheless offered to pay plaintiff $650.00 as a compromise settlement of the claim, and that offer was rejected.
Two experts testified in behalf of plaintiff at the trial, but their testimony was more damaging than helpful to plaintiff's cause.
Hubert Fontenot, a building contractor and long-time friend of plaintiff, testified that he inspected the dwelling sometime in 1973, and found some damage to the ceilings caused by water. He stated that the water spots he saw on the ceiling of plaintiff's home were similar to those which he noted were on the ceiling of the courtroom in which the case was being tried. He did not get on the roof of plaintiff's home, however, and he testified that "there is no way" that he could determine "whether or not the roof of this building was damaged by wind or whether or not it is just worn out."
Ronald S. Ferguson, an expert "estimator" of roof damages, inspected the roof of plaintiff's home on April 3, 1973, at plaintiff's request, and he submitted a bid of $543.47 to reroof the den, on the backside of his home where there was a flat roof. His did was accepted by plaintiff, and the work was done in June, 1973. Mr. Ferguson was unable to recall whether or not there was wind damage to plaintiff's roof when he inspected it. During the trial, however, he examined the photographs which had been taken of the roof by Cagnina shortly after the roof allegedly was damaged, and after doing so he testified that although he could not rule out wind damage he was of the firm opinion that there had been no wind damage at all to the roof of plaintiff's home. Ferguson, of course, was an expert called by Reed to testify in behalf of plaintiff.
No evidence was presented at the trial tending to show the wind velocity in Lake Charles at any time during the month of February, 1973, or to show that a wind storm of any kind occurred about that time. Plaintiff testified that his home was damaged by wind and water "somewhere along in February," and that the damage was caused by "the wind and the rain." We find no evidence, other than the above statements by plaintiff, that the wind velocity was such that it could have caused the damage he alleges. As we have already indicated, the evidence as a whole tends to contradict, rather than support, plaintiff's statements that the roof of his home was damaged by wind. Despite this lack of supporting evidence, defendant on this appeal does not question the principal award made to plaintiff. It contends only that the trial court erred in awarding penalties and attorney's fees.
The award of penalties and attorney's fees made by the jury verdict and the judgment of the trial court is based on LSA-R.S. 22:658, which makes insurers liable for penalties and attorney's fees when they fail to pay a claim within 60 days after receipt of proof of loss and demand, *358 provided the failure to pay is found to be arbitrary, capricious or without probable cause. The statute is penal in nature and it must be strictly construed. Nichols v. Iowa Mutual Insurance Co., 232 La. 856, 95 So.2d 338 (1957); Cryer v. Gulf Insurance Co., 276 So.2d 889 (La.App. 1 Cir. 1973). Penalties may not be assessed merely because the insurer is the unsuccessful litigant in the lawsuit. They may be assessed only where the failure to pay is arbitrary, capricious and without probable cause. Headrick v. Pennsylvania Millers Mutual Insurance Co., 257 La. 1101, 245 So.2d 324 (1971).
Where there is a serious dispute as to the nature of the loss, thus leaving the question of coverage in doubt, the insurer's refusal to pay the claim is not arbitrary, capricious or without probable cause. Guidroz v. General Accident Fire & Life Insurance Corp., 216 So.2d 377 (La.App. 3 Cir. 1968); Creole Explorations, Inc. v. Underwriters at Lloyd's, 245 La. 927, 161 So.2d 768 (1964).
In the instant suit we have concluded that the jury clearly erred in its apparent finding that defendant was arbitrary, capricious and without probable cause in refusing to pay plaintiff's claim until the matter could be be judicially determined. The judgment rendered by the trial court, based on that jury verdict, must be amended, therefore, to delete the award of penalties and attorney's fees made to plaintiff.
For the reasons assigned, the judgment appealed from is amended by deleting entirely that part of the decree which awards plaintiff 12 percent penalties and attorney's fees in the amount of $1,083.00. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellee.
Amended and affirmed.