339 So.2d 880 (1976)
John H. ARTIGUE, Plaintiff-Appellee,
v.
LOUISIANA FARM BUREAU MUTUAL INSURANCE COMPANY, Defendant-Appellant.
No. 5660.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1976.
Dissenting Opinion November 15, 1976.
Rehearing Denied December 15, 1976.
Writ Refused February 14, 1977.
*881 Davidson, Meaux, Onebane & Donohoe by Robert M. Mahony, Lafayette, for defendant-appellant.
Logan & DeLaunay by Gerald C. DeLaunay, Lafayette, for plaintiff-appellee.
Before HOOD, DOMENGEAUX and GUIDRY, JJ.
*882 GUIDRY, Judge.
In this suit plaintiff seeks the recovery of statutory penalties and attorney's fees, as provided for under LSA-R.S. 22:658, for the alleged arbitrary and capricious failure of defendant to timely pay the amount due plaintiff under a "Home Owner's" insurance policy issued to him. The trial court rendered judgment in favor of plaintiff assessing penalties of 12% on the total amount of the loss or the sum of $10,824.00, plus attorney's fees in the amount of $3,000.00, with legal interest on such sums from date of judicial demand, finding that defendant failed to make payment of the loss within sixty days after receipt of "satisfactory proofs of loss" and that its failure to do so was arbitrary and without probable cause. Defendant has appealed urging that the trial court erred in finding that payment was not made within the 60 day delay allowed by the cited statute; and, in any event, if such payment was made after such period the trial court erred in finding that defendant's failure to pay was arbitrary or without probable cause. Plaintiff answered defendant's appeal and seeks an increase in attorney's fees.
There is no substantial dispute as to the facts. Plaintiff was the owner of a large brick veneer residence located some 3½ miles from the City of Lafayette. While such residence was under construction, i.e., sometime during the latter part of November, 1974, a small fire was detected in the garage. This fire was extinguished before any substantial damage occurred. An investigation into the cause of this fire was conducted by a Deputy Fire Marshal. This investigation disclosed that building material stored in the garage had been saturated with some type of petroleum product. The investigator opined that the fire started when this saturated building material ignited. Sometime prior to December 2, 1974, the residence was completed and plaintiff moved in. On the latter date, defendant issued a "Home Owner's" insurance policy to plaintiff insuring the dwelling and contents, said policy providing coverage in the amount of $60,000.00 for the dwelling, $30,000.00 for unscheduled personal property and additional living expenses in the amount of $12,000.00. On December 6, 1974, plaintiff and his family journeyed to New Orleans for a visit. During the early morning hours of December 7, 1974, plaintiff's home and all contents therein were totally destroyed by fire. Plaintiff was informed of the fire by telephone and he and his family immediately returned to Lafayette. Because of alleged suspicious circumstances, i.e., a can containing about a gallon of gasoline being found in the driveway and a car coming out of a narrow dirt road near plaintiff's home just prior to discovery of the fire, the State Fire Marshal was again asked to investigate the cause of the fire.
On December 10, 1974, the first business day following the fire, plaintiff called at Farm Bureau's local office and reported the fire to their agents, Messrs. Castille and Melancon, indicating at that time that he wished to make a claim for total loss of the home and contents. On this visit plaintiff furnished these agents with a statement written in his own hand setting forth facts concerning the fire which were within his knowledge. In addition, defendant's agent, Mr. Castille, completed a company form designated as "SWORN STATEMENT IN PROOF OF LOSS", setting forth thereon all information requested. Plaintiff was not requested to sign this form. On this same day Mr. Melancon, defendant's claim adjuster, went to the site of plaintiff's former residence and took photographs. These photographs show unquestionably that plaintiff's residence and all contents were totally destroyed. On December 19, 1974, a second and more complete statement was secured from Mr. Artigue. On December 20, 1974, the two statements taken from plaintiff, the photographs, and the unsigned proof of loss form were received at defendant's main office in Baton Rouge, Louisiana. On December 24, 1974, First National Bank of Lafayette, holder of a mortgage on the plaintiff's home and loss payee under the Artigue insurance contract, forwarded *883 to defendant an affidavit intended as a sworn proof of loss advising of the total destruction of the Artigue residence and demanding payment of all amounts due under its mortgage. Defendant admits to having received this document from First National Bank of Lafayette some few days following its execution. Sometime between the date of the fire and the latter part of December, 1974, plaintiff being dissatisfied with the progress being made on the settlement of his claim, retained counsel to secure payment of his insurance loss. Pursuant to a request from defendant, plaintiff furnished a list of the contents of his home with the valuation of each separate item, which list was received in Farm Bureau's main office on January 3, 1975. The list referred to showed the contents lost in the fire to have a total value in excess of $43,000.00. At the request of defendant, on January 21, 1975 plaintiff signed a "SWORN STATEMENT IN PROOF OF LOSS" before a Notary Public, which form was forwarded to defendant's main office and received there on January 23, 1975. It is significant to note that the only material difference between the proof of loss form prepared on December 10, 1974 and received in Baton Rouge on December 20,1974, with that prepared on January 21,1975, and received in Baton Rouge on January 23, 1975, is that the latter bears the signature of plaintiff and the former does not. On March 18, 1975 (54 days following receipt of the proof of loss dated January 21, 1975; 74 days following receipt of the list and valuation of personal property lost; 88 days following receipt of the proof of loss dated December 10, 1975; and, well over 60 days following receipt of the proof of loss furnished by First National Bank of Lafayette) defendant issued and delivered to plaintiff its draft in payment of the full amount of loss, i.e., $90,200.00.
The substantial issues for determination are: (1) did defendant fail to make payment within sixty days after receipt of satisfactory proofs of loss; and, (2) if so was such failure arbitrary, capricious, or without probable cause.

DID DEFENDANT FAIL TO MAKE PAYMENT WITHIN THE DELAY PROVIDED FOR BY LSA-R.S. 22:658?
LSA-R.S. 22:658 provides as follows:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees."
The trial court determined that defendant failed to make payment within the delay provided for by the cited statute reasoning that the proof of loss filed by the First National Bank of Lafayette, admittedly received in defendant's main office more than 60 days prior to payment, was a sufficient compliance with the statute. The trial court opined that:
". . . Section 22:658 provides that payment must be made within 60 days after receipt of satisfactory proof of loss from the insured, employee or any party in interest. Certainly the mortgagee is a party in interest whose proof of loss *884 should be satisfactory to require payment."
We neither approve or disapprove this holding of the trial court, rather we prefer to base our holding of statutory untimeliness of payment upon the finding that satisfactory proofs of loss were given by the insured and received in defendant's main office on December 20, 1974 and certainly by January 3, 1975.
As is clear from the facts heretofore briefly outlined the insured met with defendant's agents three days following the fire. At this meeting he gave all of the facts necessary for preparation of a proper proof of loss form, which was in fact prepared by the agent and although unsigned was forwarded to the main office. In addition, plaintiff furnished defendant with a signed statement which was supplemented by a later statement given on December 19, 1974. The unsigned proof of loss form, plaintiff's signed statements, and photographs taken by defendant's agent, all of which confirmed that there was a total loss under the policy, were received by defendant on December 20, 1974. On January 3, 1975 defendant received a complete list furnished by plaintiff detailing each personal item of unscheduled property which was destroyed in the fire. This list showed the total value of personal property destroyed to be in excess of $43,000.00.
It appears to be well settled that no proof of loss in writing is required by LSA-R.S. 22:658. Wilkins v. Allstate Insurance Company, 173 So.2d 199 (La.App.1st Cir. 1965); Moore v. St. Paul Fire and Marine Insurance Company, 193 So.2d 882 (La. App.3rd Cir. 1967); Gatte v. Coal Operators Casualty Company, 225 So.2d 256 (La. App.3rd Cir. 1969) reversed on other grounds, 256 La. 325, 236 So.2d 485 (1970). In Gatte v. Coal Operators Casualty Company, supra, we stated:
". . . it is not necessary that the proof of loss be in writing, or in any other formal style, so long as the defendant has actual knowledge of the facts . . ."
Clearly by January 3, 1975, defendant was possessed of all of the facts surrounding the fire loss sustained by plaintiff and the amount of such loss. It is admitted that defendant had not received by that date a formal proof of loss form signed by plaintiff, however, under the cited cases such, under the circumstances, was unnecessary. In connection with the latter we make mention of the fact that the record supports a finding that defendant's agents deliberately refrained from securing plaintiff's signature to the first proof of loss form completed on December 10, 1974, because they considered that until such was signed and received by the insurer the delay provided for by LSA-R.S. 22:658 would not commence to run. In this connection Mr. William B. Briggs, defendant's district claim's manager, testified as follows:
"Q. Do you know why no forms of this sort were furnished to him prior to that time?
A. Why?
Q. Right.
A. Well, at the particular time, we were not ready toor the investigation of this claim was not completed. Mr. Artigue had not asked for a Proof of Loss form. We had just simply held up furnishing it to him until we were ready to furnish it."
In this same vein defendant's local adjuster, Mr. Alcee Melancon, testified as follows:
"Q. So you're saying that you do not submit a proof of loss until your investigation is completed?
A. That's correct. Normally."
Under these circumstances, even if it be considered that the proof of loss submitted by plaintiff was technically deficient under the statute, because plaintiff failed to affix his signature thereto, we conclude, as did our Supreme Court in Gatte v. Coal Operators Casualty Company, supra, that the insurer waived the deficiency.
For these reasons we conclude that defendant's payment to plaintiff on March 18, 1975, was untimely.

*885 WAS DEFENDANT'S DELAY IN PAYMENT ARBITRARY, CAPRICIOUS OR WITHOUT PROBABLE CAUSE?
Defendant contends that it did not act arbitrarily, capriciously or without probable cause in delaying payment of plaintiff's claim because there was some question concerning the values placed on the personal effects and secondly, because the fire was of suspicious origin and under investigation by the State Fire Marshal.
The record reflects that of the innumerable items of personal property set forth on the list of January 3, 1975, defendant questioned the value of about ten items. Plaintiff, through counsel, promptly responded to such questions and furnished such additional information as was requested. In addition to this circumstance it is noted that the total valuation of personal property originally furnished by plaintiff amounted to a sum in excess of $43,000.00 while the policy covered contents only to the extent of $30,000.00. Defendant eventually paid its policy limits of $30,000.00. There is simply no merit to defendant's contention that it withheld payment because it questioned the value of the items of personal property.
Defendant's remaining contention, that it was entitled to delay payment of this claim because the fire was of suspicious origin and under investigation by the State Fire Marshal is equally without merit.
As stated in Baghrama.in v. MFA Mutual Insurance Company, 315 So.2d 849 (La.App.3rd Cir. 1975), writs refused October 13, 1975:
"To sustain the defense of arson the insurer has the burden of proving by a preponderance of evidence that (1) the fire was of incendiary origin, and (2) plaintiff was responsible for it. Proof may be, and invariably is, by circumstantial evidence. When proof is circumstantial, the evidence must be so convincing that it will sustain no other reasonable hypothesis but that plaintiff was responsible for the fire. Sumrall v. Providence Washington Ins. Co., 221 La. 633, 60 So.2d 68 (1952)."
The record in this case clearly supports a finding that the defendant insurer did not have at any time prior to the expiration of the 60 day delay sufficient information on which to base a judgment that the fire was of incendiary origin and absolutely no evidence whatever indicating that plaintiff was responsible for the fire. To the contrary, defendant's employees and the Deputy Fire Marshal who conducted the investigation all candidly testified that no evidence, sufficient to justify a conclusion that the fire was of incendiary origin, was ever discovered. It is true that on the date of payment the Fire Marshal had not yet closed his file, however, as we determined in Baghramain, supra, there is no law authorizing an insurer to deny a claim on the basis that the Fire Marshal has not closed his file.
Defendant relies on Headrick v. Pennsylvania Millers Mutual Insurance Company, 257 La. 1101, 245 So.2d 324 (1971) in support of the contention that its untimely payment was neither arbitrary nor capricious. Headrick is inapposite from a factual standpoint. Although, in Headrick, as in this case, the insurer never formally denied the claim, in Headrick the insurer had before it prior to expiration of the sixty day delay, sufficient information to justify a conclusion that the fire was of incendiary origin and that the homeowner was responsible for the fire. As aforestated, in the instant case defendant was never possessed of any concrete evidence indicating that the fire was the result of arson or that plaintiff was responsible for the fire. In addition, whatever suspicions defendant may have entertained as a result of the factual circumstances previously related, i.e., a gas can being found in the driveway and a speeding car being seen leaving the road leading to plaintiff's home, were quelled long prior to expiration of the sixty day period reckoning from December 20, 1974.
The trial court was clearly correct in finding defendant's untimely payment of this insurance claim to be without probable cause.
*886 The trial judge awarded plaintiff $3,000.00 as attorney's fees. Defendant does not seriously oppose this award as being excessive. Plaintiff has answered the appeal and contends that such award should be increased so as to compensate him for the additional legal work necessitated by this appeal.
The amount awarded as attorney's fees is left largely to the discretion of the trial court. The factors which are generally considered in determining the amount of such an award include the degree of professional skill and ability exercised, the amount of the claim, and the amount recovered for the plaintiff, and the time devoted to the case. Each case is considered in light of its own facts and circumstances. In all instances, however, the amount awarded must be reasonable. Bezue v. Hartford Accident and Indemnity Company, 224 So.2d 76 (La.App.1st Cir. 1969); Ray v. Superior Iron Works and Supply Company, Inc., 284 So.2d 140 (La.App.3rd Cir. 1973).
We have reviewed the record in this case and find the amount awarded by the trial court as attorney's fees to be reasonable and sufficient to compensate plaintiff's counsel for work on both the trial and appellate level.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
AFFIRMED.
DOMENGEAUX, J., concurs in the opinion but would increase the attorney fees an additional $500.00 so as to compensate appellee for work done on appeal. Horn v. Vancouver, 322 So.2d 816 (La.App.3rd Cir. 1975).
HOOD, J., dissents and assigns reasons.
HOOD, Judge (dissenting).
I cannot agree with my colleagues that plaintiff is entitled to recover penalties and attorney's fees.
In my opinion, defendant paid the claim "within sixty days after receipt of satisfactory proofs of loss from the insured," as required by LSA-R.S. 22:658. Even if the facts should justify a conclusion that payment was delayed more than sixty days after a satisfactory proof of loss was filed, I think any delay which may have occurred was fully justified, and that defendant was not arbitrary, capricious, or without probable cause in failing to make the payment sooner.
Courts have held many times that LSA-R.S. 22:658 is a penal statute and that it must be strictly construed. Penalties may not be assessed merely because payment was delayed more than 60 days after receipt of proof of loss. They may be assessed only where the failure to pay within the 60 day period is arbitrary, capricious or without probable cause. Headrick v. Pennsylvania Millers Mutual Insurance Company, 257 La. 1101, 245 So.2d 324 (1971); Reed v. United States Fidelity & Guaranty Company, 302 So.2d 354 (La.App. 3 Cir. 1974); Nichols v. Iowa Mutual Insurance Company, 232 La. 856, 95 So.2d 338 (1957).
My colleagues concede that defendant did not receive "a formal proof of loss form signed by plaintiff" until January 23, 1975, and that payment of the full amount provided in the policy was made to plaintiff within 60 days (actually, within 54 days) after that date. They hold, however, that "satisfactory proofs of loss were given by the insured and received in defendant's main office on December 20, 1974, and certainly by January 3,1975," and that defendant was arbitrary and capricious and liable for penalties because payment was not made until 74 days after the last mentioned date. The majority admits that the documents which they consider to be "satisfactory proofs of loss" were unsigned and were "technically deficient under the statute," but they conclude (without giving any basis for such a conclusion) that defendant had "waived the deficiency," and that the harsh penal provision of LSA-R.S. 22:658 should be invoked.
I respectfully suggest that all of the information and all of the documents which were furnished by plaintiff prior to January *887 23, 1975, cannot reasonably be considered as "satisfactory proofs of loss," or as a basis on which defendant could determine its obligations under the policy. I also suggest that there is nothing in the record which will support the holding that defendant waived the filing of a proof of loss, as required by the policy and by LSA-R.S. 22:658. The evidence, on the contrary, shows that defendant consistently required a formal proof of loss, it diligently pursued its investigation so that payment could be made within 60 days after that proof of loss was filed, and it voluntarily paid the full amount of the policy within that 60 day period, even though it could not complete its investigation within that time.
On December 10, 1974, plaintiff reported the fire to an adjuster for defendant, and that adjuster partially filled out a form entitled "Sworn Statement in Proof of Loss." The information filled out on that form indicated that a fire occurred at plaintiff's home on December 7, 1974, that the total insurance was $60,000.00 on the building and $30,000.00 on the contents, and that the cash value of the property at the time of the loss was $70,000.00. No amounts were filled in to show "The Whole Loss and Damage" or to show "The amount claimed under policy." Instead, the form merely contains a notation "Total loss?". There is nothing in the form to show that a claim was being made, or if so, the amount which was being claimed, or the amount of damages which had been sustained. The form was not signed by anyone. The District Claims Manager for the insurer explained that the agent or adjuster ordinarily uses a "Notice of Loss" to inform the company when he learns of a loss, and that in this case, the adjuster "just started on the wrong form." The adjuster testified that he never intended for the partially filled-out form to be a proof of loss or a claim, that he never asked plaintiff to fill out such a form and that he did not make notations on that form for plaintiff or to assist him in submitting a claim. In any event, the unsigned form which was partially filled out by the adjuster shows that no demand or claim was being made by anyone, and it did not purport to show the loss sustained by the insured. That document thus could not serve as a proof of loss or as a claim by plaintiff. I am unable to agree with the holding that the only material difference between the form partially filled out by the adjuster on December 10, 1974 and the formal proof of loss filed by plaintiff on January 23, 1975 is that the latter bears the signature of plaintiff and the former does not.
Artigue admits that the adjuster informed him on December 10, 1974 that he would have to make out a list of the contents which were in the house at the time of the fire. Within two weeks thereafter plaintiff engaged an attorney to assist him in handling his claim, and he has been represented by capable counsel since the latter part of December, 1974. His attorney obviously was aware of the fact that a proof of loss had to be submitted, because he promptly made up a list of the contents of the house at the time of the fire, he made out and had plaintiff sign a formal proof of loss which shows the amount of the loss and the amount claimed, and he filed that proof of loss with the insurer on January 23, 1975. That document filed on January 23, 1975 constituted the first information defendant received as to the amount claimed by plaintiff. The full amount of the policy was paid within 60 days after that proof of loss was filed.
The list of contents prepared by plaintiff's attorney was received by defendant on January 3, 1975. Defendant challenged the values placed on some of the items which were included in that list, and for reasons to be given later I think the defendant's objections were reasonable. But, even if the list should have been accepted at its face value, it could not have served as a proof of loss as to damage to the house.
Plaintiff furnished defendant's adjuster with a brief hand written statement on December 10, 1974, when he first reported the fire. That statement, however, makes no reference to the value of the house or its contents, or the amount of the loss sustained by plaintiff, and it contains nothing *888 to indicate that plaintiff was asserting a claim. The entire statement apparently was intended to establish that plaintiff did not start the fire. Plaintiff explained in that statement that he was in a motel in New Orleans at the time the fire occurred, that he was notified of the fire by a telephone call, and that he came home the next morning. It concludes with the declaration: "I don't know of anyone who would, or could have burned my house. This is a true statement."
My colleagues state that on December 19, 1974, a second statement was secured from Artigue and was furnished to defendant on the following day. They apparently hold that that statement constituted a satisfactory proof of loss. Defendant's adjuster testified that he obtained a more complete statement from Artigue on December 19, but the statement was never introduced into evidence and there is nothing in the record to show what was contained in it. It cannot serve as a proof of loss.
The insurance policy issued by defendant covering this loss provides that within 60 days after the loss, ". . . the insured shall render to this company a proof of loss, signed and sworn to by the insured," stating among other things "the actual cash value of each item thereof and the amount of loss thereto, all incumbrances thereon, all other contracts of insurance," and other information.
The record shows without question, I think, that plaintiff did not furnish defendant with a proof of loss as required by the policy and by LSA-R.S. 22:658 until January 23, 1975. Payment was made within 60 days after that date, so no penalties or attorney's fees are due by defendant.
Assuming, alternatively, that the documents filed by plaintiff prior to January 23, 1975 constituted "sufficient proofs of loss," the evidence available to defendant at that time made it highly questionable as to whether defendant was liable at all, and under those circumstances I think defendant was entitled to a reasonable delay to enable it to investigate the claim.
No one questions the fact that the two fires in plaintiff's home were caused by arson. My colleagues and I cannot, and do not, suggest that they were started by plaintiff. The evidence which was available to defendant up to the time payment was made, however, was sufficient to reasonably justify a suspicion that the fire was caused by the insured.
The first fire occurred during the early morning hours of November 18, 1974, before the construction of plaintiff's new home had been completed. Artigue showed that he had left the premises an hour before the fire occurred, and that no one was present at the home when it started. That fire was extinguished without much damage, but a deputy fire marshall was notified within two hours after it occurred, and he found that some building materials stored in the garage of the house had been saturated with tractor fuel, or "some type of petroleum product," and that they had been ignited. He suspicioned arson, and he began an investigation of the fire.
While that investigation was being conducted, and before it had been completed, the house again caught fire and was completely destroyed. The second fire began about midnight on December 7, 1974, and it prevented the fire marshall from completing his investigation of the first one. The deputy fire marshall was called to investigate the second fire, and upon his arrival at the scene he found a gasoline can, containing approximately one gallon of gasoline, just outside the house on the driveway. He learned that immediately after the fire started a car with "a white top and a red body" was seen driving at a fast rate of speed away from the home, on the narrow dirt road which led from the highway to plaintiff's new residence. A witness stated to the investigator that the car was "coming at a high speed and didn't bother to stop and share the small dirt road." The vehicle fitted the description of an automobile owned by a relative of the plaintiff. Plaintiff showed that he had left the house before the second fire started, and that no one was present at that time.
*889 The deputy fire marshall began a thorough investigation of the second fire, and he did not complete that investigation until November 4, 1975, long after defendant had paid the full amount called for under the policy.
Defendant would not be liable under the policy if the fire was of incendiary origin and plaintiff was responsible for it. The evidence indicated strongly that the fire originated by arson, and the facts justified a reasonable suspicion that the plaintiff was responsible for it. I think defendant had the right to delay payment until it could investigate and determine whether plaintiff was responsible for the loss. The evidence shows that defendant pursued its investigation diligently, and that it made payment of the full amount of the policy even before that investigation could be completed.
On January 21, 1975, defendant mailed a "Proof of Loss" to plaintiff with the request that he fill it out and have it notarized. The completed form was returned on January 23. On January 29, defendant's District Claims Manager wrote to its adjuster, enclosing a photocopy of the proof of loss which had been furnished by plaintiff six days earlier, informing the adjuster that the claim must be paid or acted upon within 60 days, urging him to furnish the Fire Marshall with all the information he had, advising that "the Fire Marshall will now try to obtain a polygraph test from the insured, regarding this fire," and instructing the adjuster to impress upon the Fire Marshall the fact that a decision on the claim would have to be made within the next 60 days and that the company would like the benefit of his full investigation and report prior to that time. On February 3, 1975, defendant's District Claims Manager wrote to the Fire Marshall, sending him all the information defendant had relating to the fire, and stating "If we could be of any further assistance, please so advise." I believe that defendant did everything it could to rush the completion of that investigation, so that it could determine whether it was liable under the policy.
In my opinion, defendant also was justified in delaying payment until it could investigate the claims made by plaintiff for the loss of contents of the house. In the list of contents which was submitted to defendant on January 3, 1975, plaintiff valued the lost contents at $43,000.00. Defendant promptly questioned the values placed on some of the listed items. My colleagues dismiss defendant's argument that it was entitled to a reasonable time within which to investigate those claimed values by stating that "there is simply no merit to defendant's contention that it withheld payment because it questioned the value of the items of personal property." I disagree with my colleagues as to the merits of that argument.
The list of contents furnished by plaintiff consisted of six type written pages. The values placed on many items on that list appear to be inflated, and I believe defendant should have been allowed a reasonable time to investigate them. For example, the following are some of the items listed in that document:

 Original Cost Present Value
 Dishes $ 1,000.00 $ 1,200.00
 Liquor and Bar Acc. 500.00 500.00
 Motor Bike 400.00 500.00
 Antique Mirror 250.00 1,500.00
 Stockings 100.00 100.00
 Two Bibles 190.00 190.00
 4 King Sized Bedroom
 Sets 12,000.00 15,000.00
 Wardrobe, John 4,000.00 5,000.00
 Wardrobe, Earline 5,000.00 6,000.00
 Underclothes, Robes,
 Pajamas 200.00 225.00
 Gowns 400.00 450.00
 Shoes and Boots 300.00 300.00
 Cash in House
 (Silver Certificates) 1,200.00

After defendant questioned some of these values, it received a letter from plaintiff's attorney on February 21, 1975, explaining the values placed on some of the items. Most of the explanations given, however, were indefinite and I think unsatisfactory. In several instances, for instance, he explains that "he (Artigue) does not have any receipts." As to the antique mirror, Artigue "indicates that this item was purchased *890 for cash at an auction in New Orleans." To support his claim of $15,000.00 for the king sized bedroom sets, he explains, "that these were purchased throughout the past several years in New Orleans, Lafayette and Baton Rouge. He (Artigue) has no records of the exact prices. He (Artigue) indicates that two of the sets were Broyhill and that the others were of like quality." With reference to plaintiff's wardrobe, and that of his wife, he states simply that they were purchased locally with cash, and that he has no receipts for them.
Defendant nevertheless did not delay payment. It paid the full face amount of the policy, $30,000.00, for the lost contents within 25 days after defendant received the "explanation" from plaintiff's attorney. I think the payment thus was made within 25 days (instead of 60) from the time a satisfactory proof of claim was submitted, and that the delay was reasonable. Certainly the insurer was not arbitrary or capricious.
In Antoine v. Houston Fire and Casualty Company, 232 So.2d 588 (La.App. 3 Cir. 1970), we held that the insurer was not liable for penalties where payment was made more than four months after the accident, but within 60 days after formal demand for payment was made. The court, with Judge (was Justice) Tate as its organ, said:
"The insurer therefore is not liable for penalties. Under the statute, if the nonpayment is arbitrary, a further pre-requisite for such liability is (a) demand, either written or oral, for such payment of past due compensation, Moore v. St. Paul Fire & Marine Insurance Company, 251 La. 201, 203 So.2d 548 and (b) a lapse of more than sixty days after such demand without payment of compensation undoubtedly due, LSA-R.S. 22:658,Stagg v. New Amsterdam Casualty Company, La.App. 3d Cir., 166 So.2d 82. The trial court thereof correctly denied penalties."
In Reed v. United States Fidelity & Guaranty Company, 302 So.2d 354 (La.App. 3 Cir. 1974), we stated that "Where there is a serious dispute as to the nature of the loss, thus leaving the question of coverage in doubt, the insurer's refusal to pay the claim is not arbitrary, capricious or without probable cause."
The facts in Headrick v. Pennsylvania Millers Mutual Insurance Company, supra, are similar to those presented here. The fire was found to have been of incendiary origin, and the plaintiff was a suspect, as in this case. Unlike the present case, however, no payment was made by the insurer prior to the trial. The court found that plaintiff was not responsible for the fire, but it concluded the defendant's refusal to pay was not arbitrary, capricious or without probable cause and that defendant thus was not liable for penalties.
In the instant suit, defendant has never denied its obligation under the policy. On the contrary, it has indicated that it was ready and willing to pay the claim, as soon as a determination could be made that plaintiff was not responsible for the fire and as soon as the value of the contents could be determined. It had no figures on which it could have based such a payment until it received the formal proof of loss from plaintiff on January 23, 1975.
Payment of the full amount due under the policy was made 54 days after the required proof of loss was filed with the insurer. Defendant clearly has been in good faith. It was not arbitrary, capricious or without probable cause in delaying payment of this claim until March 18, 1975. I think the majority has erred in imposing penalties in this case.
For these reasons, I respectfully dissent.