411 So.2d 722 (1982)
Bobby Joe DUNN, Plaintiff-Appellee,
v.
REDMAN HOMES, INC., et al., Defendant-Appellant.
No. 8678.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1982.
*723 Provosty, Sadler & deLaunay, David P. Spence, Alexandria, for defendant-appellant.
Kennedy & Yeager, Ralph W. Kennedy, Alexandria, for plaintiff-appellee.
Before FORET, CUTRER and DOUCET, JJ.
DOUCET, Judge.
This suit in redhibition was brought by the buyer of a mobile home, Billy Joe Dunn, appellee herein, against the manufacturer, Redman Homes, Inc., and the seller, Cannon Mobile Homes, seeking recision of the sale, return of the purchase price, incidental damages, and attorney's fees. The manufacturer responded to the suit alleging that the mobile home was not defective, that any defects therein were due to fault of those other than the manufacturer, and that in the event a defect was proven plaintiff was only entitled to reduction in the purchase price and the manufacturer was entitled to a credit against any judgment for the value of the use of the mobile home by plaintiff. The seller did not answer the *724 suit and a default judgment was rendered against it.[1]
Following trial on the merits, the trial court rendered judgment in favor of the plaintiff, rescinding the sale, and awarding damages and attorney's fees. From said judgment, defendant, Redman Homes, Inc., has appealed assigning as error the trial court's factual determination that the mobile home was defective as manufactured, and the relief awarded. More specifically, the latter attack is premised on the fact that recision of the sale was ordered rather than awarding quanti minoris relief, that the award of damages was excessive, that an offset for plaintiff's use of the mobile home should have been granted, and lastly, that the trial court erred in awarding attorney's fees.
Preliminarily, we take note of the applicable codal articles pertaining to such suits in redhibition:
Art. 2520. Redhibition, definition
Art. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
* * * * * *
Art. 2530. Proof of existence of vice before sale
Art. 2530. The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.
* * * * * *
Art. 2545. Liability of seller for concealment of vice
Art. 2545. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages.
Our review of the record indicates the trial judge accurately portrayed the facts in his opinion, and accordingly we incorporate his summation herein:
"Plaintiff purchased the mobile home, manufactured by Redman Homes, Inc., on or about June 19, 1979, from the defendant Cannon Mobile Homes for a negotiated cash price of $16,608.80 which includes $638.80 in taxes. Other expenses of the sale included property insurance of $818.00, title fee of $7.00 and recordation fees of $2.00. Plaintiff placed a down payment of $7,000 on the mobile home and financed the balance, through Commercial National Bank of Shreveport, for a total deferred payment price of $27,163.60. This sum includes interest on the loan totaling $9,727.80.
Testimony at trial established that the plaintiff observed the home, at Cannon Mobile Homes, two or three times prior to purchasing it. During these visits the plaintiff did not notice any defects in the mobile home. After purchase plaintiff had the site for the home prepared by a road crew from the Grant Parish Police Jury. The Police Jury road crew leveled off the site and prepared the foundation.
After site preparation was completed the home was moved on site by Tom Crocker. Mr. Crocker handled all of the home movings and set ups for Cannon Mobile Homes. At trial of the matter Mr. Crocker testified that he had moved and set up thousands of mobile homes since starting his moving business. I found Mr. Crocker to be very competent in this aspect of the business. There were no problems in moving the home to the site and the home foundation was compacted and as hard as concrete as testified to by Mr. Crocker. After the home was moved to the site, the operation to place it on concrete blocks and level it was begun. It was at this time that the problems for the plaintiff began.
To determine if the home is level, Mr. Crocker uses a four foot level placed on *725 the floor of the home to get a correct reading and to determine which side, if any, needed to be raised or lowered to facilitate the leveling. Mr. Crocker was hampered in his efforts to level the home due to the unlevel floors throughout the home. He testified that the floor of the home was like a rocking chair and there was no place he could get an accurate reading from the level. Defendants' Exhibit 4 shows the bow in the floor of 3/8". Mr. Crocker testifies that it got worse toward the back of the home.
After attempting to level the mobile home, and failing, Mr. Crocker notified the plaintiff of the problem and advised him to get in touch with Mr. Cannon of Cannon Mobile Homes, which the plaintiff did. Mr. Cannon and Mr. Crocker then returned in an attempt to level the home. The two men attempted to level the home by the usual methods, but were unsuccessful.
Although the home was not level, the plaintiff and his family moved in. After moving in the plaintiff noticed other defects in the home. Because the home was not level the water would not drain out of the bathtub and lavatories properly. The door would not remain open unless they were propped open. In addition to these inconveniences there were also a number of cosmetic defects including a hole in the sidewall of the home. The cosmetic defects were soon remedied, but the home was never leveled.
After Mr. Cannon and Mr. Crocker failed in their attempt to level the home, plaintiff placed a phone call to Redman Homes to find out if they could remedy the problem. The defendants sent out their serviceman, Stan Hanna, in an attempt to correct the problem. Hanna made at least three (3) trips to the plaintiff's home. The first trip, as evidenced by Redman Homes, Inc., Service Authorization and Inspection Release (P-4), was to repair the cosmetic defects complained of by plaintiff and mentioned earlier in this opinion.
The second and third visits evidenced by plaintiff's Exhibit 5(P-5), shows that Hanna went to the home to check on a sagging frame, fixed bowed rafters and found that the floor was crowned both ways. Hanna also tried to level the home, but he failed even after replacing some of the blocks of the foundation. Hanna notified Redman Homes in Texas that he was unable to level the home. Redman Homes then sent out troubleshooters in an attempt to correct the problems with plaintiff's home. On one of these occasions a welder welded some additional angle iron to the structure of the home in an attempt to correct the problem, but to no avail.
Tom Crocker testified that he thought the problem was caused by a dropped sidewall of the home or could be caused by bowed cross members in the floor itself. The extra angle iron welded to the home was an attempt to correct the problem of the dropped sidewall. The bowed cross members would have to be removed from under the floor and replaced, if in fact this is the problem with the home.
The plaintiff, still having problems with the home, had Daniel Gleason inspect the home. Daniel Gleason is a self-employed mobile home serviceman. He has been in this business since 1969. He inspected the home and also found that he could not find a level place on the floor. He also found that the frame on the left side of the home was approximately 6 inches lower than the frame on the right side. Mr. Gleason also attempted to level the trailer, but was unsuccessful.
After the numerous attempts to correct the defects in the mobile home, the plaintiff tendered the home back to the defendants and asked to rescind the sale. The defendants refused and this suit ensued....."
The trial judge, after reviewing the testimony and evidence adduced at trial, was convinced that the defects complained of by plaintiff existed at the time of the sale, that they were not apparent, and were so serious as to warrant recision of the sale. This court will not disturb reasonable *726 evaluations of credibility and inferences of fact absent manifest error. Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Canter v. Koehring, 283 So.2d 716 (La.1973); Boustany v. Fluid Dynamics, Inc., 392 So.2d 750 (La.App. 3rd Cir. 1980). In the present case we find no manifest error. Indeed the evidence fully supports the trial court's findings that a serious defect, sufficient to warrant recision of the sale, existed at the time of the sale. The evidence indicates that the defect was discovered by Mr. Crocker, delivery agent for the seller, upon delivery and set-up of the mobile home. Upon discovery of the defects Mr. Crocker notified the plaintiff, who thereafter made repeated attempts to have the defects remedied, but to no avail. As one is not likely to note an unlevel mobile home until it is properly placed on a foundation, we find no error in the trial judge's application of the three day presumption, contained in LSA-C.C. Art. 2530, to the facts of this case. Appellant's claim that plaintiff should not be able to avail himself of this presumption because he did not move into the mobile home until a week after delivery is without merit. In any event, the plaintiff discharged his burden of proving the existence of a defect at the time of the sale by direct and circumstantial evidence. He was not required to negate all other possible causes of the defect as long as the circumstantial evidence excludes all other reasonable hypotheses with a fair amount of certainty. Rey v. Cuccia, 298 So.2d 840 (La.1974); Custom Metal & Air Conditioning Co. v. Boudreaux, 346 So.2d 1379 (La.App. 3rd Cir. 1977). Conversely, there was no evidence to support Redman's contention that the damage occurred in transportation of the home to plaintiff's lot, or that there was any other event which could have reasonably caused the defects complained of.
Before this court will disturb an award by the trial court, the record must clearly reveal that the trier of fact abused its much discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Reck v. Stevens, 373 So.2d 498 (La.1979). The trial judge did not abuse his discretion in ordering recision, rather than reduction in the price, in light of his factual determination that the mobile home was altogether unsuited for its intended purpose, and the fact that attempts to rectify the problems had been futile. Similarly, we do not feel the trial judge abused his discretion in awarding damages. The trial court itemized its award to plaintiff as follows: (A) $7,000.00down payment; (B) $638.80 for taxes; (C) $7.00Title fee; (D) $2.00recordation fee; (E) $27,163.60 (total deferred payment price) less the balance due and owing to the Commercial Bank of Shreveport. In order that the mobile home be returned to defendant free of all liens and encumbrances, the trial judge directed defendant to apply part of the sum awarded to plaintiff in satisfaction of the loan held by the Commercial Bank of Shreveport. Thus by phrasing the award in such a fashion the trial court did not duplicate the first four elements of the award. Appellant claims it is entitled to a credit for unearned interest which will occur upon prepayment of the loan, however, there is no evidence of any provision for such credit; thus this claim is denied.
Furthermore, appellant claims the trial court erred in denying defendant an offset for plaintiff's use and depreciation of the mobile home. Admittedly some credit is usually awarded, Weaver v. Fleetwood Homes of Mississippi, Inc., 327 So.2d 172 (La.App. 3rd Cir. 1976), however, in the present case the trial judge noted that the home had been a constant inconvenience and worry to plaintiff, and he never had the opportunity to fully utilize the home. Any benefit of possession obtained by plaintiff was occasioned by the seller's rejection of plaintiff's tender of the mobile home. Additionally, the trial judge observed that any depreciation that occurred took place before the sale. We feel that the trial court's award substantially restored the parties to the same situation as existed prior to the sale, and ascertain no abuse of discretion.
Finally, the trial court awarded $9,000.00 in attorney's fees, an amount appellant *727 claims is excessive. We agree. Factors to be considered in determining the award of attorney's fees include the degree of professional skill and ability exercised, the amount of the claim, the amount recovered for the plaintiff, and the time devoted to the case. Artigue v. Louisiana Farm Bureau Mut. Ins. Co., 339 So.2d 880 (La. App. 3rd Cir. 1976), writ ref. 341 So.2d 1132 (La.1977). Although the skill and ability of plaintiff's counsel is not questioned, the issues presented were not novel. The record indicates suit was filed on January 29, 1980, and the case was heard on April 21, 1981. There were no preliminary motions or exceptions. Presentation of the case was completed in one day. In light of the above, we believe an award of $4,000 would be sufficient and reasonable to compensate plaintiff's attorney for services rendered at both the trial and appellate levels.
For reasons assigned the judgment appealed is amended to reduce the award of attorney's fees to $4,000.00. In all other respects, the judgment is affirmed. All costs taxed to appellant.
AFFIRMED AS AMENDED.
NOTES
[1] At the time of trial Cannon Mobile Homes was no longer in business.