591 So.2d 1261 (1991)
Howard BUTEAU, Plaintiff-Appellee,
v.
Teddy LELEUX, et al., Defendants-Appellants.
No. 90-550.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1991.
*1262 Cousin & Cousin, Jacques Cousin, New Iberia, for plaintiff/appellee.
Elizath A. Dugal, Lafayette, T. Kenneth Watkins, Houm, Roy, Forrest & Lopresto, Leon E. Roy III, New Iberia, for defendant/appellant.
Before DOMENGEAUX, C.J., and GUIDRY and KING, JJ.
GUIDRY, Judge.
This is an appeal in a redhibition suit. Howard Buteau, plaintiff-appellee, seeks rescission of the sale of a VM Marine engine purchased on July 17, 1984 from defendant-appellant, Teddy A. Leleux, d/b/a Roadrunner Marine. Leleux had acquired the engine from M & L Industries, Inc. (hereafter M & L), also made defendant herein. M & L was the exclusive regional distributor of engines manufactured by Stabilimenti Meccanici VM S.p.A. (hereafter VM), an Italian corporation. The trial court found that a redhibitory defect existed in the engine at the time of the sale and ordered the sale rescinded and granted judgment in favor of plaintiff and against defendants, Leleux and M & L, in solido for $12,134.99 with legal interest from the date of judicial demand. This amount consisted of the $10,000 cash paid by Buteau for the engine along with the $2,000 value the court assigned to the Chevrolet 330 engine which Buteau traded in plus a $134.99 maintenance charge. Additionally, the trial court rendered judgment against M & L for $8,829.68 representing the plaintiff's attorney's fees and expenses incurred in prosecuting this suit. In doing so, the trial court reasoned that M & L stands in the place of the manufacturer, who the law presumes had knowledge of the defect on the date of sale. La.C.C. art. 2545.
M & L and Leleux appeal asserting trial court error in the following particulars:
1. Classifying M & L as a "bad faith seller" within the intendment of La.C.C. art. 2545; and, severing M & L's third party demand against VM.

*1263 2. Failing to order that plaintiff return the VM engine to M & L upon rescission of the sale.
3. Granting excessive attorney's fees to plaintiff.

FACTS
In 1984, plaintiff, Howard Buteau, was employed by Exxon at its Bayou Sale, Louisiana facility. He owned a 32 foot Lafitte skiff which he used to trawl for shrimp in his spare time. During that summer, he read an advertisement in a magazine promoting the VM marine diesel engine. The advertisement identified M & L as the distributor. Pursuant to that advertisement, Buteau contacted M & L in Houma. He was referred to M & L's Lafayette office. An M & L sales representative there further referred him to Leleux, the owner of Roadrunner Marine in New Iberia. Buteau testified that M & L represented to him that Leleux was "their salesman". He stated that he was informed that M & L distributed the VM engine to Leleux, who in turn would sell to the general public and do the complete installation work on the VM engines.
At the time plaintiff contacted Leleux, the engine in question was installed in Leleux's personal boat and had 29 hours of use on it. Leleux testified that the engine was a demonstrator which he could sell either separately from or in a package with his boat. This fact was corroborated by the invoice from M & L to Leleux which was stamped "For Re-Sale" and which reflected no assessment or payment of sales tax. Leleux also testified that, based on the course of his dealings with M & L, the engine was sold as a "like new" engine with the VM one-year contractual warranty applicable. In addition, Leleux stated that it was his impression that M & L considered Roadrunner Marine to be a VM dealer despite the absence of a written dealer agreement. Although M & L denied that Leleux was its dealer, Marvin Marmande, Jr., admitted that he approached Leleux on behalf of M & L about becoming a VM dealer. Marmande also admitted that he put a VM advertising sticker on Roadrunner's front door.
Buteau paid for the VM diesel engine and picked it up on or about August 17, 1984 after Leleux had installed it in his boat. On the date of its first use, he had trouble with the engine. It failed to re-start after having run for a long period of time while trawling. Buteau contacted Leleux, who informed him that he only installed the engines and that M & L was responsible for service and repairs. Buteau then contacted M & L, which dispatched its diesel mechanic, Lynn Blanchard, to the Bayou Sale location to work on the engine. The testimony of Buteau, which was corroborated by three of his trawling companions, reveals that he continued to have problems with the engine every time he trawled. During the fall of 1984, Buteau estimated that this occurred on approximately 10 to 15 occasions. It also occurred approximately the same number of times in the spring of 1985. M & L was called after every trawling expedition and Blanchard was either sent to Bayou Sale or stopped at the boat to check on it on his way back from another service call. During this time period, Buteau was charged for only one service call when Blanchard changed the oil in his engine.
Blanchard testified that he changed the "safety switch" on the starter and diagnosed the major problem as overheating caused by a defective heat exchanger which he explained existed at the time the engine left the factory.
The trial court determined that the malfunctioning heat exchanger was a redhibitory defect warranting rescission of the sale between Leleux and Buteau. On appeal, appellants do not assign as error the determination that a redhibitory defect in the engine did in fact exist at the time of the sale to Buteau.

ASSIGNMENT OF ERROR NO. 1
M & L contends that the trial court was wrong in placing it in the manufacturer's *1264 shoes, and, as such, presuming M & L had knowledge of the vice of the thing which it sold. Rey v. Cuccia, 298 So.2d 840 (La.1974). As a manufacturer presumed to have such knowledge, M & L was deemed a "bad faith" seller and, as such, liable for Buteau's attorney's fees and expenses pursuant to La.C.C. art. 2545, which provides:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
M & L was classified as a "de facto" manufacturer based in part on the rule first enunciated in Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 So.2d 377 (La.1972), on remand, 264 So.2d 686 (La.App. 4th Cir. 1972). In Media, the plaintiff bought a defective automobile from Cookie's Auto Sales, Inc. in Baton Rouge. The car was manufactured in Germany by Dailmer-Benz Aktiengesellschaft and imported into the United States by Mercedes-Benz of North America, Inc. (MBNA), which distributed the car to Cookie's. The plaintiff obtained a final judgment against Cookie's, which was not executed upon since the dealership was out of business. In Media, the Louisiana Supreme Court held that MBNA occupied the position of the manufacturer and was thus solidarily liable with Cookie's for payment of the purchase price and other expenses. The Media court reasoned that the close relationship between MBNA and the German manufacturer was sufficient to place MBNA in the manufacturer's position. Factors considered included MBNA's total responsibility for marketing Mercedes-Benz cars and for selling, servicing and establishing franchise dealerships in the United States, the placement of MBNA's name upon virtually all manuals, policies, and literature of the manufacturer, and the operation of a vehicle distribution center. In addition, the court focused on the fact that MBNA inspects, adjusts and prepares the automobiles for transfer to its dealers for retail sale.
In the case sub judice, M & L entered into a "Marine Depot Agreement" with VM. The contract provided M & L with the exclusive right to sell and service VM engines in nine southeastern states.[1] Section 2 of the agreement provides that the intent of M & L is to establish "an effective sales and service organization comparable to a `mini-factory' and a network of reputable and financially responsible dealers ...". The section goes on to list 14 specifically detailed obligations of M & L, including (but not limited to) marketing, sales and service; establishing a dealer network; maintaining an inventory of units, spare parts and accessories (and assuring that the dealers do the same); making manuals, bulletins and catalogs available to dealers; training dealer personnel in sales and service; advertising and promoting the engines; and, providing VM with a monthly unit stock report.
The engines are manufactured by VM in Italy and imported into the United States by Dale Chambliss d/b/a VM Group of America. They are then transferred to M & L as the exclusive regional distributor to retailers in the nine southeastern states. M & L asserts that it is merely a local distributor without knowledge of the defects in the engine. As such, deeming it a manufacturer with knowledge of the vices of the engine and assessing it with "bad faith" damages was wrong.
In our view, M & L cannot be considered merely a local distributor when it contracted for exclusive rights to distribute in such a large area as nine states. The similarities between MBNA in Media, supra, and M & L in this case prompts us to conclude that the trial court did not err when it placed M & L in the position of the manufacturer. Clearly, under the rule established *1265 in Media, M & L was correctly classified as the manufacturer because of its close contractual relationship with VM; the exclusivity of its large territory of distribution; and, its many detailed obligations under the Marine Depot Agreement.
We find no merit in M & L's assertion that the trial court erred in severing its third party demand against Dale Chambliss d/b/a VM Group of America, VM Group of America and Stabilimenti Meccanici VM S.p.A. The third party demand was severed prior to trial upon M & L's own motion. M & L cannot now complain of a pre-trial order which it requested.
M & L also assigns error in three factual determinations made by the trial court. It asserts that the alleged factual errors are sufficient to overturn the trial court's judgment. We disagree. A thorough review of the record reveals that the trial court's factual conclusions are supported by the record and not clearly wrong. M & L is correct in asserting that the judge erred in finding that the testimony was uncontradicted (emphasis added) that M & L gave Buteau a "like new" warranty. Clearly, the testimony was contradicted by M & L employees and officials, but there is sufficient evidence in the record to conclude that M & L did give Buteau a "like new" warranty. Accordingly, we find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 2
In its judgment, the trial court did not order Buteau to return the VM engine to M & L. The appellant assigns error in this omission and cites Mid City Finance Co., Inc. v. Coleman, 232 So.2d 918 (La. App. 4th Cir.1970), in support of this contention. Coleman involved an automobile redhibition claim in which the trial court granted plaintiff rescission of the sale. The judgment of the trial court did not provide for restoration of the vehicle's title in the name of the vendor. The Fourth Circuit amended the trial court's judgment to provide for such a transfer of title.
The record in the case sub judice reveals that M & L is presently in possession of the engine and has been since at least February of 1986 when David Boudreaux, a diesel mechanic employed by Waukesha Pierce, accompanied Buteau to the M & L facility in Houma to independently inspect the engine. Boudreaux and Buteau testified that the engine had been taken apart by M & L and was in a large box separated into its component pieces. Clearly, Buteau returned the engine to M & L at some point and such tender was accepted by M & L when it took possession of the engine. It appears from the record that M & L is still in possession of the engine. We can discern no legal reason to technically amend the trial court's judgment by ordering Buteau to return the engine to M & L when, in fact, M & L has possession of the engine. This case is distinguishable from Coleman in that, unlike the situation in which an automobile is involved, it is not necessary for M & L to be listed as the owner on a certificate of title in order to be recognized as owner of the engine. The effect of a rescission is to return the parties "... as nearly as possible to the situation as it existed prior to the sale. The vendee returns the property to the vendor and the vendor returns the purchase price". Nugent v. Stanley, 336 So.2d 1058 (La. App. 3rd Cir.1976). Clearly, the judgment provides for rescission of the sale. Ordering Buteau to return the engine to M & L when M & L already has possession of the engine is simply not necessary.

ASSIGNMENT OF ERROR NO. 3
M & L contends that the trial court's award of attorney's fees and expenses to plaintiff in the total amount of $8,829.68 is unreasonably excessive. It is well settled that in determining attorney's fees in a redhibition case, the trial court must consider the following factors:
1. The responsibility incurred;
2. The extent and nature of the work performed;
3. The legal know how and skill of counsel; and,

*1266 4. The amount of the claim and the amount recovered for the plaintiff.
See Reilly v. Gene Ducote Volkswagen, Inc., 549 So.2d 428 (La.App. 5th Cir.1989); Guillory v. Jim Tatman's Mobile Homes, 490 So.2d 1185 (La.App. 3rd Cir.1986); and, Dunn v. Redman Homes, Inc., 411 So.2d 722 (La.App. 3rd Cir.1982). In its reasons for judgment, the trial judge noted that plaintiff's attorney testified to having worked a total of 96.75 documented hours on the case prior to trial and 16.75 hours during trial. He awarded attorney's fees for a total of 113.25 hours worked at $75 per hour plus expenses. Before this court will disburb an award by the trial court, the record must clearly reveal that the trier of fact abused its much discretion in making the award. Reck v. Stevens, 373 So.2d 498 (La.1979); Dunn, supra. Although we view the trial court's award as generous, we are unable to find a clear abuse of the trial court's much discretion.
Where attorney's fees are specifically authorized by statute as an element of recovery, the trial court must utilize the four factors listed above to evaluate the reasonableness of the fees sought to be recovered. The trial court is afforded great discretion in this endeavor and the four factors should not limit this exercise of the judge's discretion. Philippe v. Browning Arms Company, 395 So.2d 310, 317 (La.1980), on rehearing, 395 So.2d at 314 (La.1981); Dowden v. Commonwealth Life Insurance Company, 407 So.2d 1355, 1358 (La.App. 3rd Cir.1981).
For the above and foregoing reasons, the trial court's judgment is affirmed.
AFFIRMED.
NOTES
[1] The contract signed July 3, 1984, in Annex A, provides the territory as follows: Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina and Tennessee. Florida and Georgia are excluded for DM-HD Units (engines).