BEER, Judge.
Plaintiff, Brenton T. Morse, Jr. (hereafter, Morse) has appealed from a judgment denying his claim against his former employer, J. Ray McDermott, Inc. (hereafter, McDermott) for installment payments of several “supplemental compensation awards” made during the period of his employment and for recognition of his right to retirement benefits.
Morse was employed by McDermott from June 1, 1958 until April 7, 1970, at which time he was terminated because of an economic downturn. The termination was in no way related to any misconduct, incompetence or willful neglect on plaintiff’s part. At the time there was no formal contract of employment between Morse and McDermott.
The “Supplemental Compensation Plan” was unilaterally adopted by McDermott in 1966 to reward, annually, certain managerial employees who contributed to the company’s increased productivity and income during the year. The plan was entirely funded by McDermott. There was no fiscal contribution — in any form whatever— by the employees.
In 1966 and each year thereafter a committee administering the plan made awards (designated as “current awards”) of a percentage of the company’s income to certain employees, including Morse. The plan stipulated that the awards were payable on the following terms and conditions:
“(1) A Current Award is made payable in five equal installments, 20% of the award to be paid to the Eligible Employee within thirty (30) days of the Committee’s determination of the amount awarded to him pursuant to paragraph (b) of this section, and an additional 20% thereof to be paid on July 15 of each of the four succeeding calendar years; provided that (i) said Employee has been in the continuous employ of the Company or any of its Subsidiaries up to each such July 15 date, or (ii) at the time his employment shall have terminated prior to the last of such July 15 dates, the Committee, in its discretion, shall have waived such requirement of continuous employment, or (iii) his employment has terminated before the last of such July 15 dates as a result of death, disability or retirement (other than early retirement) under the Retirement Plan. In the event that his employment terminates under any other circumstances prior to receipt of the total amount of his award, the Elibible [sic] Employee shall forfeit all unpaid portions of said award.”
Thus it can be seen that the plan provided incentive to key employees by a sharing of increased income and further sought to induce these employees to remain with the company in order to continue reaping the benefits of the plan. Clearly, the requirement that employees who merited an award for a particular year remain with the company for an additional four years in order to receive the full amount awarded was an inducement to continued employment.
Morse contends that although the plan contemplated that an employee would forfeit unpaid installments if he voluntarily left the company or was terminated for cause, it should not be so interpreted in his case since he was involuntarily terminated; his non-willful failure to fulfill the plan’s requirements should not result in forfeiture of the yet unpaid installments which were already “earned.”
On the other hand, McDermott contends that since the employees neither paid any funds into the Supplemental Compensation Plan nor collectively bargained for any of the compensation payable under the plan, *413 the payments under the plan were gratuities on its part, and employees whose services were terminated for any reason whatsoever were not entitled to unpaid installments. They point out that an essential condition for continued payment under the plan was that Morse remain in Mc-Dermott’s employment. They essentially acknowledge that Morse was ready and willing to remain but was prevented from fulfilling the condition of continued employment by reason of the economic downturn which caused the reduction in force of McDermott employees including Morse.
Even if McDermott had discharged Morse without cause, the parties would be bound by the unequivocal terms of the plan. As noted by the able trial judge, the plan itself must be the law between the parties and, absent a need for judicial interpretation, must be followed as written.
Since the plan is clear with respect to the issue that now confronts us, we feel judicially restrained from reforming it— even though equitable considerations for doing so may exist. The claim for the unpaid installments of the Supplemental Compensation Awards must be denied.
During his employment plaintiff was covered by a non-contributory retirement plan, which provided in pertinent part:
“ ‘Early Retirement Date’ means the first day of the month coincident with or next following the date of retirement of a Participant who retires under the provisions of Section 2.2 hereof prior to his Normal Retirement Date and on or subsequent to the date as of which he has both:
“(a) completed 15 years of Credited Service; and
“(b) attained the age of:
“(i) 55 years for a Participant who has not completed at least 60 months of Service in a Hardship area and who is not an aircraft pilot ; or
“(ii) 50 years for an aircraft pilot ; or
“(iii) the age one month in advance of age 55 years for each month of Service which is in excess of 60 which was completed in a Hardship Area for a Participant who is not an aircraft pilot and who has completed at least 60 months of Service in a Hardship Area; provided, however, such age shall not be less than 50 years.”
Morse contends that he is entitled to early retirement benefits, by computing “eleven and one-half of (lli/á) years of regular employment plus 60i/£ months for employment in hardship areas, for which period his regular employment time is increased, making his total employment for purpose of the retirement plan I61/2 years.” But this is not within the provisions of the plan.
The plan clearly required both that the employee complete 15 years of service and that he attain a certain age in order to be eligible for early retirement benefits. The age requirement could be reduced on account of service in hardship areas but inasmuch as Morse did not complete 15 years of service he was not eligible, at any event, for early retirement benefits.
The plan also provided (Section 2.5) for benefits on termination of service at an earlier age, but that provision also required 15 years of service. Furthermore, Section 2.5 specifically provided (with exceptions as to disability or death) that:
. . the Participant whose service is terminated prior to the date as of which he has both attained the age of 45 years and completed 15 years of Credited Service shall not be entitled to any benefit under the Plan whatever.”
*414 Finally, Morse contends that McDermott could not offer to pay vested retirement benefits if he completed IS years of service and then effectively revoke that offer by terminating him after he had completed almost 12 years of performance in response to the offer.
However, McDermott had no obligation to Morse to continue his employment beyond the date of his termination and the terms of the retirement plan clearly provided that Morse had absolutely no vested right to retirement benefits until he completed 15 years of service.
Since the plan is, again, clear with respect to this issue we must, again, exercise judicial restraint in reforming it — even though equitable considerations for doing so may exist.
Accordingly, the judgment of the trial court is affirmed. Plaintiff-appellant must bear the cost of this appeal.

AFFIRMED.

REDMANN, J., dissents.
LEMMON, JT., dissents with reasons.