342 So.2d 1268 (1977)
Manuel BAILEY
v.
AMERICAN SUGAR REFINERY, a/k/a Amstar Corporation.
No. 7846.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1977.
Rehearing Denied March 15, 1977.
Writ Not Considered May 5, 1977.
*1269 Gertler & Gertler, M. H. Gertler, Richard H. Levenstein, New Orleans, for Manuel Bailey.
Chaffe, McCall, Phillips, Toler & Sarpy, G. Phillip Shuler, III, New Orleans, for American Sugar Refinery, a/k/a Amstar Corp.
Before BOUTALL, LEMMON and STOULIG, JJ.
BOUTALL, Judge.
This is an appeal from a judgment of the trial court that maintained the defendant's exception of prematurity and dismissed plaintiff's suit.
On June 17, 1975, plaintiff-appellant Manuel Bailey filed a "Petition for Recovery of Wages" seeking his vacation pay from his former employer, American Sugar Refinery, plus penalties and attorney's fees for defendant's arbitrary refusal to pay. Defendant filed exceptions of prescription, prematurity and failure to join an indispensable party. Plaintiff then amended his petition, pleading the facts of accrual of his vacation pay and alleging that he was no longer an employee and unable to use the grievance procedure provided in the collective bargaining agreement. After trial of the exceptions, judgment was rendered for the defendant, maintaining the exception of prematurity.
The vacation pay sought is provided in the terms of an agreement executed between Amstar Corporation and Amalgamated Meat Cutters and Butcher Workers of North America, Local Union No. P-1101 (hereinafter referred to as the "Union"). Article X of the Collective Bargaining Agreement[1] provides that employees are *1270 entitled to vacation benefits provided that they worked a requisite number of hours prior to February 1st of the year the vacation benefits are requested.
The plaintiff resigned his position with the defendant because of physical disability on May 13, 1974. On or about February 1, 1975, plaintiff applied for his earned vacation pay but was denied his request. The plaintiff then filed this suit to recover the vacation pay, penalty wages and attorney's fees, relying on authority of LSA-R.S. 23:631-640, specifically R.S. 23-631, 632, and 640. Those three statutes provide that an employer has a duty to pay a discharged or resigned employee within twenty-four hours of his discharge or resignation and that the failure to pay the employee's wages due on request would subject an employer to penalties and attorney's fees if the refusal or failure to pay is found to be arbitrary and capricious and without probable cause. R.S. 23:631, 632. For purposes of the statute, vacation benefits are to be treated as wages. R.S. 23:640.
Defendant's exception of prematurity is based upon Article III of the Collective Bargaining Agreement which establishes the grievance procedures to be followed by all employees with grievances. Article 111(2) of the Collective Bargaining Agreement, in effect at the time when the request for vacation pay was denied, states:
"All grievances and complaints respecting the interpretation, application or performance of this agreement shall be negotiated as follows: * * *"
The collective bargaining agreement referred to herein provides the following method of resolving disputes:
"Article III
"(1) When differences or complaints arise between Management and the Local, or any employee or employees, there shall be no suspension of work on account of such disputes. Grievances must be filed within a period of thirty (30) days following the occurrence of the grievance, except where by mutual agreement, due to the importance of the grievance, the time limit is extended.
"(2) All grievances and complaints respecting the interpretation, application or performance of this agreement shall be negotiated as follows:
"(a) First, between the aggrieved employee's Shop Steward and the Foreman of the department involved, efforts will be made to settle the grievance not later than two (2) working days after it has been presented to the Foreman.
"(b) If the grievance is not settled under the procedure provided in (a) above, it shall be immediately (and in no case later than forty-eight (48) hours after its disposition under (a) above, submitted to the Personnel Manager or his designee, after having first been reduced to writing and signed by the Shop Steward, and shall identify the grievant(s) involved. Within one (1) week after the grievance is so submitted to him the Personnel Manager or his designee shall confer with the Local Grievance Committee, and shall deliver to the chairman of such committee the written decision with respect to the grievance within two (2) days following such meeting.
"(c) If the grievance is not settled, then within two (2) weeks after the written answer of the Personnel Manager or his designee has been delivered to the Union, the grievance shall be considered and, if possible, settled in a conference between representatives of the Local, the Sugar and Allied Products Division of the International, and/or other Management representatives on the other hand.
"(d) If the grievance is not so settled, the Union may demand arbitration by notifying the Company in writing. Such demand must take place within two (2) weeks after the conclusion of the conference referred to in (c) above. The parties have, upon the execution * * *"
*1271 The issue on the exception is whether the plaintiff had a duty to exhaust his remedies under the agreement before he could seek relief in the courts.
The plaintiff argues that he is not bound by the collective bargaining agreement because he was not an employee at the time demand for vacation pay was made. However, the plaintiff does assert that the right of an employee to vacation pay was created by the arbitration agreement, which places the plaintiff in a position of arguing that one part of the collective bargaining agreement is applicable to him and that other parts are not applicable to him.
The position assumed by the plaintiff is untenable. The United States Supreme Court has held that federal labor policy requires an aggrieved employee to attempt to use of established grievance procedures before seeking other modes of redress, where those procedures are made exclusive by the applicable bargaining agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614,13 L.Ed.2d 580 (1965). One exception to the requirement that contract remedies be exhausted is where the union has sole power under the contract to invoke higher stages of the grievance procedure and the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903,17 L.Ed.2d 842 (1967).
The basis of this suit is not simply a former employee suing for money earned and not paid under R.S. 23:640. The basic issue is whether the former employee is still considered an employee such that he is entitled to accrual of vacation rights under terms of the Collective Bargaining Agreement. It involves an interpretation of that agreement and a determination if the Union, representing the employees, and the Company bargained for those particular benefits. In a collective bargaining agreement, each party gives up certain rights and benefits to achieve other rights and benefits. This collective bargaining agreement in the Article entitled "Finality and Effect of the Agreement" makes the grievance procedure established in Article III exclusive. Article XXIII(3) says in part,
"...... Therefore, the Company and the Union, each agrees that except as specifically provided in this Agreement, the other shall not be obligated to bargain collectively with respect to any matter....."
In consequence, we must reach the conclusion that the grievance procedure established in Article III of the Agreement is applicable. Because the plaintiff failed to plead that he had submitted his complaint through the grievance procedure and that the Union failed to act or acted in a manner that would place the plaintiff under the exception created by Vaca v. Sipes (supra), we must hold that plaintiff's suit is premature. It is a general rule of law that a party must exhaust his administrative remedy before relief can be sought in the courts, unless doing so would be vain and useless. Bagert v. Moreau, La.App., 325 So.2d 702 (1976).
Accordingly, the judgment maintaining the exception of prematurity is affirmed.
AFFIRMED.
LEMMON, J., dissents and assigns reasons.
LEMMON, Judge, dissenting and assigning reasons.
The issue which plaintiff attempted to raise in this suit is whether employment on February 1 is an absolute requirement for entitlement to vacation pay, inasmuch as he had worked more than 1,250 hours between February 1, 1974 and February 1, 1975, although his employment with defendant had terminated for reasons beyond his control prior to February 1, 1975.
The only issue raised by this appeal is the threshold question as to whether plaintiff can have his right to wages (or fringe benefits which are deemed to be wages, R.S. 23:640) decided by the court or must demand his individual wages through the grievance procedure. Determination of the question as to ultimate entitlement has no bearing on the threshold question as to *1272 whether plaintiff has a cause of action to institute a judicial proceeding.[1]
Both wages and fringe benefits are rights to compensation created by the collective bargaining agreement, and both are subject to the same penalties for non-payment under R.S. 23:631 et seq. Consequently, this suit must be treated the same as a suit based on non-payment of wages for the last pay period. The threshold question should not be answered simply by reasoning that since vacation benefits are payable only because of the agreement, all disputes over vacation pay must be decided by the method provided in the agreement, unless we are also willing to hold that all disputes over wages (even those due to former employees who were terminated for reasons beyond their control) must be decided by the grievance procedure.
Plaintiff was an employee at the time he claims he earned the right to vacation pay, that is, on the day that he worked his 1,250th hour in the applicable period. If plaintiff had still been an employee on February 1 following, and the company had refused to pay his claim for vacation pay, he certainly had no cause of action under R.S. 23:631 et seq. and perhaps could be required to pursue the grievance procedure outlined in the collective bargaining agreement.
That reasoning (if valid), however, does not apply under the facts of this case, when plaintiff was no longer an employee on February 1, 1975, the day his (arguably) earned vacation pay became due and the day that his complaint for non-payment arose.[2]
Article III of the collective bargaining agreement applies by its terms when "complaints arise between Management and any employee". (Emphasis supplied) Indeed, the first step in the outlined procedure is negotiation between the "aggrieved employee's Shop Steward" and the company's department foreman. (Emphasis supplied) The grievance procedure, by its clear terms, applies only to a person who is still an employee when the complaint arises.[3]
In my opinion plaintiff's petition has stated a cause of action to be decided by the court.
NOTES
[1] Article X  Vacations

(1) As of February 1 of each year, each employee who has worked 1250 hours in the prior 12 month period shall be entitled to vacation with pay according to the following table:
* * * * * *
[1] The proper exception in this case was one of no cause of action, rather than prematurity, in that the decision of the trial court and the majority of this court tells plaintiff he has no cause of action to institute judicial proceedings under the facts stated in the petition.
[2] The interpretation of Article X that plaintiff probably will ultimately urge is that February 1 delineates the 12-month period for calculating hours worked and states the date that vacation benefits (if earned during that period) become payable, but that the article does not specifically require continued employment through that date.

Although this argument addresses itself strictl;' to the merits, plaintiff must contend that vacation benefits were earned compensation for services already performed by working 1,250 hours during the applicable period, especially since he would have continued in employment except for reasons beyond his control. Compare Morse v. J. Ray McDermott & Co., 330 So.2d 411 (La.App.4th Cir. 1976), reversed by the Supreme Court and now pending on rehearing granted. Although commenting on the merits, I make this observation in response to the statement in the majority opinion that the "basis of this suit is not simply a former employee suing for money earned and not paid" under R.S. 23:631 et seq. This suit is most certainly based on compensation earned and not paid, and the validity of that basis must be determined on the merits.
[3] Talbot v. National Super Markets of La., 372 F.Supp. 1050 (E.D.La.1974), cited by defendant, held simply that a complaint under R.S. 23:631 by "several employees and former employees" was removable to federal court. The court observed that the state statutory remedies could be pursued in federal court, unless the remedies are foreclosed by contractual provisions (which were not before the court on the motion to remand).