449 So.2d 56 (1984)
Curtis JOHNSON
v.
CONTINENTAL SLIP FORM BUILDERS, INC.
No. 83-CA-607.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 1984.
*57 Tom Withers, III, Withers & Withers, Baton Rouge, for Curtis Johnson, plaintiff-appellant.
G. Michael Pharis, Taylor, Porter, Brooks & Phillips, Baton Rouge, for Continental Slip Form Builders, Inc., defendant-appellee.
Before BOUTALL, GRISBAUM and DUFRESNE, JJ.
BOUTALL, Judge.
This appeal arises from a judgment denying plaintiff, Curtis Johnson, "waiting time" pay and attorneys' fees in an action against defendant, Continental Slip Form Builders, Inc. for wages due under a union contract.
The plaintiff, Curtis Johnson ("Johnson"), is a cement finisher and a member of the Cement Masons Local Union Number 812, AFL-CIO ("the union"), who was employed by defendant-appellee, Continental Slip Form Builders, Inc. ("Continental"). A collective bargaining contract between the union and the Baton Rouge Chapter of the Associated General Contractors, Inc. governed the cement masons employed by Continental on construction of a grain elevator at Convent, La. On or about September 1, 1980, Wayne Stewart ("Stewart"), superintendent at Continental, was approached by Charles M. Ikerd ("Ikerd") and John Lavigne ("Lavigne"), two of the plaintiff's fellow employees, concerning the possibility of the work crews changing their work week from the five eight hour shifts per week specified by the contract to four ten hour shifts per week. The change was requested to enable those hunters working at Continental to take greater advantage of the approaching hunting season by having three consecutive days off (Friday through Sunday) and to reduce the amount of fuel used in their traveling to and from work. Ikerd and Lavigne, stewards of two craft unions working at Continental, were told by Stewart that all workers at the site would have to agree to such an arrangement before he would sanction any such working hour change. Further, Stewart required that the agreement of all union business agents be secured.
Pursuant to the alleged verbal agreement between the parties concerned, all crafts at Continental commenced working four ten hour shifts per week on September 22, 1980. In early February, 1981, differences arose between Stewart and the plaintiff, Johnson, concerning overtime pay for this work schedule under the terms of the cement masons' contract. That contract provided for time and one-half overtime pay for any hours worked in excess of eight hours per day.
Stewart met with Bill Wright ("Wright"), the Business Representative of the Cement Masons Local Union, James Wilson, the foreman, and Johnson on the matter. Wright denied having been approached about or having agreed to the changes in the schedule and told Stewart the contract required the company to pay for the overtime. After the meeting Stewart returned the cement finishers to the original five day schedule and paid them for one week of the disputed overtime. Shortly thereafter the company terminated Johnson for reasons unconnected with this case and paid him the straight time wages that were due a few days later. Johnson demanded, but failed to receive, overtime pay for the balance of the period during which he had worked four ten-hour days.
Part III, Pay Day, Section B, of the collective bargaining agreement provides:
"When a worker is discharged he shall be paid at once. If he must wait for his money or report to an office to receive his pay, he shall be paid waiting time at the straight time rate, not to exceed eight (8) hours per day or forty (40) hours per week."
*58 Johnson filed suit for breach of contract on February 19, 1982, demanding overtime wages, penal "waiting time" wages, and attorneys' fees. Continental filed an exception of prematurity, alleging that Johnson had failed to follow the contract's arbitration and grievance procedures. On October 26, 1982, the exception was heard and overruled. The defendant did not appeal.
Trial of the merits was held on February 8, 1983. On June 20, 1983 judgment was rendered in the plaintiff's favor, awarding him the overtime pay. Although the judgment did not specifically deny waiting time wages and attorneys' fees, the reasons for judgment stated that the claim for waiting time pay was without merit because under the contract Continental was not required to pay disputed wages until liability was determined legally, and that attorneys' fees were not recoverable because they were not authorized specifically by law or by the contract.
The plaintiff thereafter appealed the judgment as to waiting time pay and attorneys' fees. The defendant filed an exception of prescription, but did not appeal the award of overtime.
The issue raised by the appellant is whether, after determining that the company did owe overtime wages to the plaintiff, the trial court erred in denying the plaintiff's claim for waiting time wages and attorneys' fees. Further, we have before us the appellee's exception of prescription.
The exception of prescription is based on the contention that federal law is controlling in a suit by an employee against his employer for breach of a union contract and the appellant's suit was barred by a prescription period of six months. As authority he cites Del Costello v. International Broth. of Teamsters, ___ U.S. ___, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), and Edwards v. Sea-Land Service, Inc., 720 F.2d 857 (5th Cir.1983). Both cases were "hybrid" suits by employees against the employers for alleged breach of the collective bargaining agreement and against the union for alleged breach of its duty of fair representation. The Supreme Court in Del Costello held that both actions must be governed by the six-months statute of limitations provided by Section 10(b) of the National Labor Relations Act for making charges of unfair labor practices to the National Labor Relations Board. The Court reasoned at 1284, as follows:
"An employee's suit against both the employer and the union has no close analogy in ordinary state law... Typically short state limitations periods for vacating arbitration awards fail to provide the aggrieved employee with a satisfactory opportunity to vindicate his rights..."
It found that the Section 10(b) limitations period provided a proper balance of the national interest in having stable bargaining relationships and rapid resolution of labor disputes and the employee's interest in correcting a perceived injustice under a union agreement. Edwards decided December 5, 1983, held that Del Costello is to be applied retroactively, barring employee suits against employers and unions after six months. We believe that the courts in Del Costello and Edwards did not intend that the six months prescription period should be applied to a suit against the employer for back wages. Unlike the hybrid suits for unfair labor practices, where there is no close analogy in state law, claims for wages owed are provided for in LSA-C.C. art. 3494, which gives a three year prescription period for actions to recover compensation for services rendered. Therefore, we choose to apply state law and overrule the appellee's exception of prescription. Having found that the appellant's cause of action was not barred under state law, we need not consider the appellee's assertion that the appellant failed to adhere to the contract's grievance procedure.
As noted above, the trial judge found that clearly the overtime was owed to Johnson upon his discharge, but that "waiting time" wages were not due and stated in his reasons for judgment:
"... the Court finds that Section III.B does not provide for any situation in *59 which the amounts of wages to be paid are in dispute, and, further, that Section III.B is penal in nature.
"It is generally recognized that penalty provisions in a contract must be strictly construed. Graham v. Lieber, 191 So.2d 204 (La.App. 2d Cir.), writ refused, 249 La. 1024, 192 So.2d 371 (1966).
"In the instant case, the contract's provisions do not provide for the payment of disputed wages. Strictly construing the contract's provision (i.e., Section III.B), it is felt that Continental was not required to pay such disputed wages prior to a legal determination of such liability. Not being required to pay such wages until such determination, Mr. Johnson cannot be considered to have `waited' for the wages due." Record, 79, 80.
Although the contract is silent as to payment of disputed wages, state law clearly provides that only the undisputed amount must be paid. LSA-R.S. 23:631 states, in pertinent part:
"A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date or discharge or resignation.
"B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section."
Penalty wages and attorney's fees are specified in LSA-R.S. 23:632, as follows:
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation."
These statutes were enacted to protect the rights of all workers regardless of the terms of employment, whether subject to a collective bargaining agreement or not. Bailey v. American Sugar Refinery, 342 So.2d 1268 (La.App. 4th Cir.1977); Hendrix v. Delta Air Lines, 234 So.2d 93 (La.App. 4th Cir.1970). Under Section 632, an employer's failure to pay will not result in a penalty where there is a good faith question as to whether the wages are owed and the employer is not found to have been arbitrary and capricious in withholding payment.
The salient issue of fact before us is whether the amount due was in dispute. The appellee urges that Johnson agreed to work the four ten hour days at the straight time rate and did work several months without complaining to the business agent of the union or the job superintendent. The testimony indicates that the agreement to change the work week was instigated by stewards of crafts other than the cement masons and that their contracts allowed the employees to work ten hours at straight time by agreement. The cement masons' contract required overtime for any hours worked over eight and provided at XIII, A, that:
"... Any deviation from these hours of work [eight hours a day, Monday through Friday] will be subject to the mutual approval of the Employer and the Business Agent..."
Stewart, the superintendent, admitted that he had not discussed the matter with Wright, the cement mason's business agent. Wilson testified that he knew the men were working four ten hour days but *60 had not been consulted by anyone and learned that they were not receiving overtime only when a new worker informed him in February. He then asked Johnson about the matter, as he was the job steward, and was told that no employees were receiving overtime. The meeting with Stewart, Johnson, Wilson, and Wright ensued. Lavigne and Ikerd insisted that Johnson had been willing to make the change and informed them his business agent approved. Stewart testified that all the stewards, including Johnson, came to tell him that they and their business agents had agreed. Johnson denies being approached by Lavigne and Ikerd or meeting with Stewart before the new schedule went into effect. He admitted not having complained to his business agent before February, while acknowledging it was the business agent's duty to negotiate grievances over wages. Johnson insists he complained to Stewart upon receiving his first check in September after the new schedule started but was told that the company would not pay overtime; he kept working because he needed the money. No other witness reported hearing a complaint before February. The testimony is equally conflicting as to whether Stewart agreed to pay all back wages. Johnson, Wilson, and Wright testified he did so promise, while Stewart testified that he agreed only to pay one week's overtime and said that the cement masons would no longer work four ten hour days. He denied having promised to pay any back overtime, only to broach the matter to his boss. The boss was out sick at the time and when he returned nothing further was done about the dispute until the company was served with the suit.
We note that the court itself questioned witnesses from time to time and feel that clearly in this case the judge based his finding of a bona fide dispute upon a careful assessment of the witnesses' testimony and their credibility. As there is ample evidence in the transcript to support the court's finding of fact, we will not disturb it. Canter v. Koehring Company, 283 So.2d 716 (La.1973). Accordingly, we hold that the appellant is not entitled to "waiting time" wages under the contract or penalty wages under LSA-R.S. 23:631, 632.
As to attorneys' fees, the statute clearly provides for an award of attorneys' fees "in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee." As the court found the wages were due under the terms of employment and the company refused to pay them, we find that the appellant is entitled to an award of attorneys' fees. In view of the apparent effort expended by the plaintiff's attorney in the trial court and in this appeal, we order an award of $2,000 in attorneys' fees to be assessed against the employer.
Accordingly, we affirm the judgment appealed from and amend to assess the sum of $2,000 in attorneys' fees plus costs of this appeal against the defendant, Continental Slip Form Builders, Inc.
AMENDED, AND AS AMENDED AFFIRMED.