FOURNET, Chief Justice.
Charles Allen Elliott, a carpenter by trade, having been discharged by his employer, General Gas Corporation, upon completion of certain repair work for which he had been employed, instituted suit for the recovery of the amount due him for wages, $140, being at the rate of $1.75 per hour for ten days’ work of eight hours per day, and, availing himself of the provisions of LSA-R.S. 23:631 and 23:632, is seeking to recover an amount representing full wages at the same rate for a forty hour week from the time of demand for payment until paid,[1] plus a reasonable attorney’s fee of $250. The defendant admitted it owed the plaintiff $140 but denied any further liability, and pleaded that it had made a tender of the amount to plaintiff by its check for $128.32 (representing payment in full for the ten days’ wages, less withholding tax and Social Security in the amount of $19.40 and including accrued interest to date of tender of $1.12, and court costs of $6.60) which was refused by plaintiff. On the trial of the case judgment for $128.32 was rendered in favor of plaintiff, at his cost, and he has appealed.
The plaintiff, employed along with another carpenter to make inside repairs to a company-owned house about a mile from the defendant’s Bossier Parish branch office (on the Benton Road), began work in November of 1952, at a rate of pay of $1.75 per hour. According to his version of the happenings, which is not disputed except in one particular, the work continued through January 14, 1953, when plaintiff was informed his services were no longer needed since the work was almost *131 completed. On the 16th of January, a'Fri-' day, plaintiff called at the office and asked for his pay; he was informed that his check had not yet come, but should be there in a 'day or so.[2] On the following day,- Saturday, a phone call was made to' plaintiff’s home; he being absent, a message was left that his check had been received and he could get it. On Monday, January 19, plaintiff called at the office of the defendant, received his check, and upon'preparing to cash it in Shreveport rea- . lizéd ' that the amount was short. This angered' him and he returned to' the office, laid the check down and said, “The check’s not- right and-T will not accept it;” he then -told the employee on duty: “Here’s my time, got every day of it set 'down,” following which he turned around and walked out. The plaintiff does not recall that anything further of interest to him was said, although the employee states he told plaintiff that the manager’s attention would be called to the alleged shortage and plaintiff could check back with them— this being the only conflict in testimony in the entire case. After the above incident of January 19, 1953, no effort was made by either the plaintiff or the defendant to get the matter amicably settled. On the 15th of February, 1953, suit was filed. On March 21,1953, the defendant tendered to the plaintiff, through his attorney, the sum. of $128.32, representing' payment in full of the ten days’ wages — withholding tax and Social Security having been deducted, accrued interest and court costs to date having been included — which was refused.
In the year 1920 the Legislature of this State, mindful of an evil practice then prevailing among some employers of fore-, ing a discharged laborer to wait until pay day, or longer, to receive the wages he had - earned, adopted its Act 150, requiring that the laborer or employee be paid any amount: regularly due under the terms'of the em-' ployment within twenty-four hours after-discharge,[3] upon demand being made upon • thé employer at the place where payment' was usually made (now LSA-R.S. 23:631); and as a coercive means tp compel obedience, the employer was made liable to the employee “for his full wages from the time the demand for payment by the dis- - charged or resigned laborer or employee was made, until the employer shall pay or tender payment of the amount due to such laborer or other employee”, plus a reasonable attorney’s fee (as amended; now LSA-R.S.’ 23:632). However, the latter provision, being penal in nature, has *133 been strictly construed by the courts and may be open to equitable defenses.[4]
Under the particular facts of this case we agree with the trial judge in his equitable conclusion that this is not a proper instance for the application of penalties. The record clearly shows that the plaintiff’s pay was made available for him on Saturday, within 24 hours after his demand, and that he called for it only on the following Monday; it is equally clear that the shortage in the pay check tendered to plaintiff was occasioned by a day’s work performed on January 1, 1953, a holiday, when the only two employees of the branch office who worked were the two carpenters (plaintiff and another) engaged in the repair work on the house; that there was no record of such work, either in the local office or in the Baton Rouge office, as it was reported to no one; and that the company'was unaware that such work had been performed until the branch manager, in checking with the other carpenter (who acted as timekeeper) following plaintiff’s complaint, for the first time learned of the work on January 1, and that this carpenter’s pay check had also been a day short. We are impressed with defendant’s prompt efforts to set matters straight; its claim that the correct amount was available to plaintiff at its office on the day following his visit of Monday, January 19, and continuously 'thereafter — instructions having been' left that he was to be paid the additional amount from petty cash — not only found favor with the District Judge, as shown by his written reasons, but is consonant with the pattern of admitted facts in this case.
For the reasons assigned, the judgment is affirmed.
PONDER, J., absent.

. When submitted to the District Court for judgment on the merits, the plaintiff’s demands were $4,030, exclusive of interest and costs.

. Defendant’s principal office is in Baton . Rouge.; it was there that payroll cheeks ...were-made up and sent to the district office in Bossier City following submission of pay-order requests covering employees who worked on an hourly basis. The checks usually arrived a couple of days after the pay period had run.

. The 1920 Act was amended by Act 138 of 1936 by extending its provisions to an employee who had resigned, and allowing attorney’s fees.

. See Deardorf v. Hunter, 160 La. 213, 106 So. 831; Hazel v. Robinson & Young, 187 La. 51, 174 So. 105; Bannon v. Techeland Oil Corporation, 205 La. 689, 17 So.2d 921; Strickland v. American Pitch Pine Export Co., 224 La. 949, 71 So.2d 338.