234 So.2d 93 (1970)
Ervin Eugene HENDRIX
v.
DELTA AIR LINES, INC.
No. 3791.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 1970.
Rehearing Denied May 4, 1970.
Writ Refused June 26, 1970.
Coe, Nowalsky & Lambert, John D. Lambert, Jr., New Orleans, for plaintiff-appellant.
Deutsch, Kerrigan & Stiles, Bernard Marcus, New Orleans, for defendant-appellee.
Before REDMANN, LeSUEUR and SWIFT, JJ.
REDMANN, Judge.
Plaintiff appeals from a judgment dismissing his demand against his former employer for statutory penalties for failure to pay plaintiff his wages within 24 hours of demand after his discharge.

*94 Facts

Plaintiff was employed as an airport "ramp service agent" and helped to load and unload planes. He normally was paid on the first and 15th of each month. He was discharged on August 13, 1968, and demanded his paycheck. Told it would take seven to ten days for the payroll office in Atlanta to provide the check (although the New Orleans office put the completed pay computation form on a plane to Atlanta that same day), plaintiff expressed his dissatisfaction, explaining his personal finances were arranged in reliance upon a mid-month paycheck, which he required for necessities. Although defendant's New Orleans manager requested plaintiff's check be expedited, he testified the Atlanta office's position is that the routine cannot be rushed and processing simply requires seven to ten days.
On the seventh and again on the tenth day after his discharge, namely August 20 and 23, plaintiff phoned his former supervisor to inquire about his check and was told it had not arrived from Atlanta. On the night of the 23rd the check did arrive in "company mail" on one of defendant's planes from Atlanta.
Defendant's supervisor testified he made a special trip to the airport that night for the "specific purpose" of looking for the check since he knew the check was, for plaintiff, "important enough that I came to the airport to make it available to him." The supervisor did not mail the check to plaintiff that Friday "because I had told him that I would make the check available to him as soon as it arrived." The supervisor testified he had told plaintiff, on plaintiff's second phone call, that "when it came in I would leave it with the coordinator and he could pick it up at his convenience." Plaintiff testified this was never said to him. Neither the supervisor nor any other employee of defendant phoned plaintiff to advise him of the check's availability; "he could call us or he could come and look."
Plaintiff, having been told on phoning earlier that same day, Friday, that his check had not arrived by that tenth day after his discharge, filed this suit for his pay plus statutory penalties and attorney's fees Monday, August 26. Also on August 26, defendant's supervisor testified, he found the check still at the Delta desk and mailed it to plaintiff. The envelope in which the check was mailed was postmarked August 26 P.M., and the check was received by plaintiff, according to his testimony, "the 26th of August or the 27th; I think it was the 26th." With consent of defendant's counsel the check was cashed by plaintiff without prejudice to this suit's further demand for penalty wages and attorney's fees.

Issues
Defendant did not pay plaintiff his wages within 24 hours of discharge. The only questions are whether the state statute, LSA-R.S. 23:631-23:632, is inapplicable because the federal Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., preempts the field and deprives the state of power to legislate effectively regarding an interstate carrier like defendant; and, if not, whether application of the state penalty provision should be denied because of some "equitable defense".

Preemption
Defendant argues that because it is an interstate carrier the state law is inapplicable, citing Divine v. Levy, 36 F.Supp. 55 (W.D.La.1940), and Sirmon v. Cron & Gracey Drilling Corp., 44 F.Supp. 29 (W.D. La.1942).
While each of those cases recites that the State law is inapplicable, each points out that its own facts are not within the terms of the Louisiana statute anyway. In neither was the plaintiff's basic claim for an "amount due under the terms of employment", if this language is strictly construed as penal statutes must be. One *95 of those plaintiffs sought a minimum wage, the other travel pay. Plaintiffs did not complain that their "terms of employment" granted the amounts sought, but rather, in spite of the agreed-upon terms of employment, plaintiffs claimed to be entitled under the Fair Labor Standards Act to more than agreed upon.
Where, as in Divine, less than minimum wage is paid, the federal law provides a 100% penalty and the State may very clearly be unable to override Congress and decide the penalty for underpayment should be more. And if the only delay charged is delay in paying the difference between agreed-upon and minimum, a statute purporting to penalize that delay might be beyond the State's power.
But that is not our case. The federal law makes no provision for or against penalties for mere failure to pay admittedly due agreed-upon wages promptly upon termination of employment. We conclude there is no preemption on this question by the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.
(Counsel for plaintiff cited Gibbons v. Kansas City Southern Ry. Co., 100 So.2d 319 (La.App.1958), as reaching the same conclusion. We think it does; see the court's statement of the plea to the jurisdiction at 100 So.2d 320. But defendant's counsel here constructs a complicated argument that FLSA preemption was not shown to be at issue there, since the plaintiff may have been an employee not subject to 29 U.S.C.A. § 207's maximum hours because of 29 U.S.C.A. § 213(b). We think it unnecessary to discuss defendant's argument. We reach our conclusion without relying on Gibbons, although we have been assisted by a reading of Gibbons, which is analogous if not identical to the matter before us.)

Equitable Defense
LSA-R.S. 23:631 makes it the duty of every employer to pay a resigned or discharged employee within 24 hours of discharge or resignation, upon demand by the employee.
R.S. 23:632, as amended in 1964, provides:
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety day's wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorneys' fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after twenty-four hours shall have elapsed from time of making the first demand following discharge or resignation."
Prior to the 1964 amendment there was no 90-day maximum on the penalty-wages.
In Clevy v. O'Meara, 236 La. 640, 108 So. 2d 538, 539-540 (1959), our Supreme Court observes:
"On several occasions this court has considered the mentioned statute and has held that the language thereof `is not so peremptory as to forbid an equitable defense against the penalty' (Deardorf v. Hunter, 160 La. 213, 106 So. 831, 832); that the statute `should be strictly construed' (Hazel v. Robinson & Young, 187 La. 51, 174 So. 105, 106); and that `it may yield to equitable defenses' (Bannon v. Techeland Oil Corporation, 205 La. 689, 17 So.2d 921, 922). See also Elliott v. General Gas Corporation, 229 La. 128, 85 So.2d 55, wherein the doctrine of the cited cases is affirmed as the jurisprudence of this court."
The Elliott case, at 85 So.2d 57, had observed the statute was adopted in 1920 in view of "an evil practice then prevailing among some employers of forcing a discharged *96 laborer to wait until pay day, or longer, to receive the wages he had earned".
Defendant here makes no suggestion whatsoever of any equitable reason why, in this particular case, it should be relieved of the penalties. To the contrary, defendant establishes that its policy and procedure is to pay terminated employees seven to ten days after discharge. Defendant simply has its own internal rules which do not admit of an exception to pay off a fired employee within 24 hours.
The statute requires such payment. That defendant's policies will never allow compliance with the statute cannot be considered an equitable defense. It is a second preemption defense which is invalid because company rules do not outrank or invalidate state law.
Plaintiff's monthly salary was $490. August having 31 days, and his check which he had demanded on August 13 having been delivered to him, at the earliest, August 26, plaintiff is entitled to 13/31 of $490, or $205.48. Plaintiff claimed penalty overtime wages, but did not prove that overtime was a required part of his regular employment so that we might consider it part of the "full wages" he is entitled to under the statute.
Reasonable attorney's fees are also provided for by the statute, and we believe $200 would be a proper amount considering that this suit had to be filed originally not only for penalties but for plaintiff's salary (including much earned overtime) as well, and further involved an appeal. Gross wages were $393.34.
Finally we note plaintiff had sought to recover $61.84 withheld from his salary, not because improperly withheld as a debt for his personal "foul-weather gear", but because the gear was missing from his locker when he returned to look for it five weeks after discharge. Treating his petition as amended to state this claim, LSA-C.C.P. art. 1154, plaintiff's evidence does not show defendant was at fault in the disappearance of his equipment or that it is on any other theory responsible for its loss.
Accordingly the judgment appealed from is reversed, and judgment is rendered in favor of Ervin Eugene Hendrix and against Delta Air Lines, Inc., in the amount of $205.48 with legal interest from judicial demand and for all costs, including attorney's fees fixed in the amount of $200.
Reversed and rendered.