641 So.2d 715 (1994)
Carol DOMITE, Plaintiff-Appellee,
v.
IMPERIAL TRADING COMPANY, INC., Defendant-Appellant.
No. 94-16.
Court of Appeal of Louisiana, Third Circuit.
August 3, 1994.
*716 W. Bernard Kramer, for Carol Domite.
Michael Thomas Tusa Jr., Carolyn Jeanelle Smilie, for Imperial Trading Co., Inc.
Before SAUNDERS, WOODARD and DECUIR, JJ.
SAUNDERS, Judge.
Defendant-appellant, IMPERIAL TRADING COMPANY, INC., appeals from the trial court's award to plaintiff-appellee, CAROL DOMITE, of unpaid vacation days in the amount of $275.00, penalty wages in the amount of $4,950.00 and attorney's fees in the amount of $1,750.00. Plaintiff-appellee answers that appeal and requests additional attorney fees.
On October 30, 1992, IMPERIAL TRADING COMPANY, INC. terminated CAROL DOMITE'S employment. CAROL DOMITE worked at IMPERIAL TRADING COMPANY, INC. as a sales representative from approximately January 10, 1989, to October 30, 1992. Following her termination, CAROL DOMITE requested payment of paid vacation days that she had earned, but had not yet taken and a bonus that she allegedly earned, but for which she was never paid.
IMPERIAL TRADING COMPANY, INC. takes this appeal and argues that the trial court erred when it: 1) ruled that paid vacation days earned and not taken by an employee are not considered paid wages, 2) assessed penalty wages without proof of bad faith on the part of the employer, 3) awarded $1,750.00 in attorney's fees to plaintiff. CAROL DOMITE answers the appeal and requests additional attorney's fees.

FACTS
CAROL DOMITE (hereinafter DOMITE) worked as a customer service representative for IMPERIAL TRADING COMPANY, INC. (hereinafter IMPERIAL) from January 10, 1989 to October 30, 1992, on which date she was terminated. In a letter sent to IMPERIAL dated November 6, 1992, DOMITE formally requested payment for one (1) week (5 days) of earned vacation days, which she had not yet taken at the time of her termination. In addition, DOMITE requested payment of a bonus that she alleged she had earned, but for which she had never received payment.
In the first two years of employment, IMPERIAL awarded to its employees one (1) week of paid vacation after an employee completed a full year of employment. At the completion of three years of employment and in each year thereafter, IMPERIAL awarded two (2) weeks of paid vacation after an employee completed the full year of employment. IMPERIAL required that its employee take all earned paid vacation days before their next anniversary date of employment or the paid vacation days were lost. In addition, IMPERIAL employees were not allowed to take two consecutive weeks of paid vacation days.
IMPERIAL awarded bonuses in the form of $50.00 savings bonds to employees who established viable new accounts. A new account was considered "viable" if the account resulted in orders of a minimum of $500.00 per week for six weeks during a thirteen (13) week period.
IMPERIAL'S vice-president of sales, Robert L. Pierpoint, Jr., responded to DOMITE'S request for payment of the vacation days not taken and the alleged unpaid bonus in a letter dated November 11, 1992. Pierpoint informed DOMITE that, pursuant to IMPERIAL'S company policy, its employees were not paid for vacation days earned and not taken before an employee's anniversary date. Lastly, Pierpoint informed DOMITE that, pursuant to IMPERIAL'S company policy, bonuses were awarded only to active employees.
Pursuant to La.R.S. 23:631 et seq., DOMITE filed suit praying for payment of the paid vacation days earned, the unpaid bonus, attorney's fees, and penalty wages. After a *717 trial on the merits, the trial court awarded DOMITE one week of wages for the unused week of paid vacation, $275.00 or five (5) days multiplied times DOMITE'S daily rate of pay, $55.00, attorney's fees in the amount of $1,750.00, and penalty wages in the amount of $4,950.00 or ninety (90) days multiplied times DOMITE'S daily rate of pay, $55.00. In denying DOMITE'S claim for the bonus, the trial court ruled that DOMITE failed to prove by a preponderance of the evidence that she earned a bonus.

I. Issues Presented
1) Whether penalty wages should be awarded to an employee pursuant to La.R.S. 23:631 et seq. without proof of bad faith or arbitrary action on the part of the employer in withholding payment of past due wages. 2) Whether defendant was in bad faith in failing to pay past due wages. 3) Whether the trial court erred in awarding $1,750.00 in attorney's fees when there was no evidence presented by plaintiff's counsel concerning the time spent and expenses incurred in preparing plaintiff's case. 4) Whether plaintiff is entitled to additional attorney's fees in responding to and answering this appeal.

II. Law and ArgumentIssue I
Whether penalty wages should be awarded to an employee pursuant to La.R.S. 23:631 et seq. without proof of bad faith or arbitrary action on the part of the employer in withholding payment of past due wages.
Pursuant to La.R.S. 23:631, upon discharge or resignation of an employee, the employer is required to pay the amount due the employee under the terms of his employment "not later than three days following the date of discharge or resignation." In addition, La.R.S. 23:632 requires that:
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation." (Emphasis added.)
In an attempt to adhere to the clear unambiguous and mandatory language of the statute, the trial court did not agree with IMPERIAL'S argument that the trial court must find that IMPERIAL acted in bad faith or arbitrarily in not paying DOMITE'S wages in order for the trial court to cast IMPERIAL in judgment for penalty wages.[1] After reviewing the wording of the statute, this court would, at least initially, agree with the trial court's interpretation of the statute. Particularly, in view of the following statutes, we would find no error in the trial court's interpretation of the statute:
"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.C.C. art. 9.
"When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10.
"The words of a law must be given their generally prevailing meaning." La.C.C. art. 11.
"When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La.C.C. art. 12.
Despite the clear unambiguous and mandatory language of the statute requiring that an employer "shall be liable" for penalty *718 wages, the jurisprudence interpreting La. R.S. 23:632 holds that the statute is penal in nature and must be strictly construed and must yield to equitable defenses, i.e. no penalty wages can be awarded if the employer was in good faith and not acting arbitrarily in failing or refusing to pay the past due wages. See, Boudreaux v. Hamilton Medical Group, Inc., 631 So.2d 721 (La.App. 3d Cir.1994) (citations omitted); Brown v. Navarre Chevrolet, Inc., 610 So.2d 165 (La.App. 3d Cir. 1992) (citing Glover v. Diving Services International, Inc., 577 So.2d 1103 (La.App. 1st Cir.1991); Jones v. Hebert & LeBlanc, Inc., 499 So.2d 1107 (La.App. 3d Cir.1986)); Becker v. Choate, 204 So.2d 680 (La.App. 3d Cir. 1967) (citing Mitchell v. First Nat. Life Ins. Co. of La., 109 So.2d 61 (La.1959)); Clevy v. O'Meara, 236 La. 640, 108 So.2d 538 (1959); Tuberville v. Foster, 113 So.2d 805 (La.1959); Elliott v. General Gas Corporation, 229 La. 128, 85 So.2d 55 (1956); Strickland v. American Pitch Pine Export Co., 224 La. 949, 71 So.2d 338 (1954); Deardorf v. Hunter, 160 La. 213, 106 So. 831 (1926).
The predecessor of La. 23:631 and 23:632 was Act 150 of 1920. That act provided upon discharge or resignation of an employee, the employer was required to pay the amount due the employee under the terms of his employment "within twenty-four hours after such discharge or resignation." In addition, Act 150 provided for penalty wages:
"Any individual, firm, person or corporation employing laborers or others in this State who shall fail or refuse to comply ... shall be liable to the said laborer or other employee for his full wages from the time of such demand for payment by the discharged or resigned laborer or employee, until the said person, firm, or corporation shall pay or tender payment of the amount due to such laborer or other employee."
In 1926 the Louisiana Supreme Court in Deardorf v. Hunter, 160 La. 213, 106 So. 831 (1926), held without citation of authority that "[t]he language of the Act 150 of 1920 is not so peremptory as to forbid an equitable defense against the penalty." Since that decision, Louisiana courts have continuously and without much further legal analysis held, using the Deardorf wording or similar language, that equitable defenses are available to an employer. After carefully reviewing the facts of Deardorf and the present day reading of 23:632, it does not appear that equitable defenses should be allowed.
In Deardorf, the plaintiff was employed as a laborer at the defendant's, Hunter's sawmill, as a lumber stacker, at $5.00 per day. When a swamp used for the logging operations flooded, the defendant discharged Deardorf and other employees. Before leaving for his home state of Illinois, defendant requested that one of his employees, Spears, send to him the payroll so that he could remit promptly the wages due the laborers. After receiving the payroll, the defendant prepared the payroll and sent the appropriate funds to Spears who used the money for other purposes and never paid to Deardorf or the other discharged employees the wages due them. Hunter did not know of Spears' failure to pay the laborers until he was so notified by the district court through a curator ad hoc appointed to represent him in his absence. Upon learning of the pending suit, Hunter came to Louisiana and offered to Deardorf and the other discharged laborers more than the amount due them in an effort to stop the lawsuits. Because Deardorf and the other plaintiffs signed contracts with their attorneys for a contingency fee, which according to Act 124 of 1906, forbade them from settling their claims without their attorneys' consent, they would only accept Hunter's offers to pay the wages under protest and with reservations of the right to proceed with the suit for the penalty wages. Hunter hired an attorney and tendered to the court the $35 wages due for the seven (7) days of labor plus the accrued interest or a total of $55.10. The trial court found in favor of Deardorf, but refused to condemn Hunter for the severe penalty of $3200.00, which would have been allowed in this case under Act 150 of 1920. In affirming the trial court's ruling not to impose the penalties, the Louisiana Supreme Court noted the equitable considerations present in the case including the fact that Hunter was a very sick man, almost insane.
Mindful of the equitable considerations, the Louisiana Supreme Court did not allow the statute with its open ended provision for *719 penalty wages to be imposed when such equitable considerations were present. Apparently, the Court recognized that following the clear unambiguous and mandatory language of Act 150 of 1920 requiring imposition of penalty wages, in the case of Deardorf and many other similar cases, would be too harsh and lead to illogical consequences. Moreover, it would have been particularly inequitable where the defendant suffered from mental illness. Referring only to the "equitable considerations," the court declined to impose penalties and set forth the seminal jurisprudence, which has been continuously followed by Louisiana courts, that enables employers to interpose a variety of equitable defenses.
Aside from the good faith effort of the defendant in Deardorf, who tried faithfully and generously to settle the employees' claims despite his poor mental state, the Louisiana Supreme Court would have also presumably held that the statute yielded to equitable defenses due solely to the inequities of the open ended penalty provision. If the penalty wages were automatically imposed after an employee successfully showed by a preponderance of the evidence that unpaid past due wages were owed to him, it is conceivable that a mere delay in bringing suit or making service on an employer, as was apparently true in Deardorf, could make the potential award for penalty wages exhorbitant in comparison to the amount of unpaid wages due the employee. For example, the unpaid wages due in Deardorf were $35.00 while the potential penalty wages were $3200.00. Herein, lies the equity problem associated with the imposition of the statute.
The present law concerning penalty wages has changed significantly since the enactment of Act 150 of 1920. The language of the statute remains clear and unambiguous in its mandatory language requiring imposition of penalty wages, however, the inequities that are associated with the open ended provision for penalty wages have been removed by restricting penalty wages to a maximum of ninety (90) days of wages. With such clear unambiguous and mandatory language and a limited liability of ninety (90) days of wages imposed on an employer, we no longer find necessary the equitable defense afforded the employer in Deardorf. We think that the Deardorf holding and its prodigy are no longer applicable in Louisiana. To allow such defenses is contrary to and makes less effective, if not ineffective, the obvious intent of the legislature in adopting this statute.[2]
In further support of our position, we note that Judge Tate, writing for the Louisiana Supreme Court, ruled that the language of the 1964 amendment of La.R.S. 23:632 had the effect of legislatively overruling pre-1964 jurisprudence that permitted employers to raise equitable defenses to the award of attorney's fees. Carriere v. Pee Wee's Equipment Co., 364 So.2d 555 (La.1978). In support of that court's judgment, Judge Tate points out the clear unambiguous language of the statute that provides "[r]easonable attorneys' fees shall be allowed the laborer ... in the event a well-founded suit for any unpaid wages ... be filed by the laborer." Id. at 556. In the case of penalty wages, the language of the statute is even stronger, i.e. penalty wages shall be awarded regardless of any other considerations of the strength of the employee's suit or bad faith on the part of the employer. In view of the reduced liability on employers and the Louisiana Supreme Court's reasoning in Carriere, we hardly see how penalty wages, like reasonable attorney's fees, should not also automatically be awarded to the employee who prevails at trial.
*720 In this case, the trial court interpreted the statute as not requiring a showing of bad faith on the part of the employer for an employee to collect penalty wages. This view is supported by the clear and unambiguous language of the statute, but it is contrary to the prevailing jurisprudence.

Issue II
2) Whether defendant was in bad faith in failing to pay past due wages.
The issue of IMPERIAL'S bad faith is a question of fact, and therefore, is subject to the manifest error or clearly wrong standard of review. See, Potvin v. Wright's Sound Gallery, Inc., 568 So.2d 623 (La.App. 2d Cir.1990); Rosell v. ESCO, 549 So.2d 840 (La.1989). We have reviewed the record and find no error in the trial court's ruling that IMPERIAL was in bad faith.
At trial, IMPERIAL argued that they were in good faith in not paying DOMITE for the unused vacation days because that was "company policy." The record reveals, however, that DOMITE was never provided with a company policy manual that informed her that she lost earned paid vacation days if she did not take them before her anniversary date or that an employee would lose earned paid vacation days if she was discharged before having the opportunity to take it. The defense did not produce a company manual at trial with the signature of DOMITE indicating at least that she had received one much less that an actual written company manual even existed.
In addition, we note that IMPERIAL'S actions show that it knew that it owed DOMITE vacation time. On the day that IMPERIAL suspended DOMITE from work, IMPERIAL chose to deduct a paid vacation day from the paid vacation days owed to her, apparently, instead of having to pay her a day's salary. IMPERIAL contends that those are not paid wages due DOMITE, but IMPERIAL recognized those unused vacations days as wages due DOMITE or it would not presumably have used them as a way to compensate her for the day that she was told not to come into work. We agree with the trial court's analysis: "[t]he court finds that the defense was not in good faith by not paying her that because they obviously recognize that she was still entitled to a weeks vacation in that they took a days pay of her wages and called it vacation."
We find no manifest error and affirm the trial court's finding of bad faith on the part of IMPERIAL in not paying DOMITE past due wages.

Issue III
3) Whether the trial court erred in awarding $1,750.00 in attorney's fees when there was no evidence presented by plaintiff's counsel concerning the time spent and expenses incurred in preparing plaintiff's case.
Before this court will disturb an award by the trial court of attorney's fees and expenses, the record must clearly reveal that the trier of fact abused its much discretion in making that award. See, Buteau v. Leleux, 591 So.2d 1261 (La.App. 3d Cir.1991); Poirrier v. Otis Engineering Corp., 602 So.2d 207 (La.App. 3d Cir.1992). "Factors to be considered in determining the award of attorney's fees include the degree of professional skill and ability exercised, the amount of the claim, the amount recovered for the plaintiff, and the time devoted to the case." Dunn v. Redman Homes, Inc., 411 So.2d 722, 727 (La.App. 3d Cir.1982) (citing Artigue v. Louisiana Farm Bureau Mut. Ins. Co., 339 So.2d 880 (La.App. 3d Cir.1976), writ refused, 341 So.2d 1132 (La.1977).
The record reveals more than sufficient evidence to indicate that the trial court's award of attorney's fees was fair and reasonable: numerous pleadings, correspondence, legal memorandum, substantial damages, and a full trial on the merits. Consequently, we affirm the trial court's award of $1,750.00 in attorney's fees.

Issue IV
Whether plaintiff is entitled to additional attorney's fees in responding to and answering this appeal.
DOMITE answered the appeal and requests additional attorney's fees for the appellate work. A review of the additional *721 work necessitated by this appeal reveals that an additional award of $1,500.00 in attorney's fees is warranted. Poirrier v. Otis Engineering Corp., 602 So.2d 207 (La.App. 3d Cir.1992) (citing Hall v. McDonald Insulation, 537 So.2d 328 (La.App. 1st Cir.1988).

III. Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed as amended.
It is ORDERED, ADJUDGED, and DECREED, that an additional amount of attorney's fees of $1,500.00 is awarded to plaintiff-appellee, CAROL DOMITE, for the additional work necessitated by this appeal.
All costs of these proceedings are to be paid by defendant-appellants, IMPERIAL TRADING COMPANY, INC.
AFFIRMED as AMENDED and RENDERED.
NOTES
[1] The trial court gave oral reasons for its decision after a trial on the merits. The trial court's reasons are transcribed and part of the record. Despite IMPERIAL'S request for written reasons, however, the trial court never provided actual written reasons for its judgment.
[2] In discussing the intent of Act 150 of 1920, the Louisiana Supreme Court stated in Elliott v. General Gas Corporation, 229 La. 128, 85 So.2d 55 (1955): "In the year 1920 the Legislature of this State, mindful of an evil practice then prevailing among some employers forcing a discharged laborer to wait until pay day, or longer, to receive the wages he had earned, adopted its Act 150, requiring that the laborer or employee be paid any amount regularly due under the terms of the employment within twenty-four hours after discharge... and as a coercive means to compel obedience, the employer was made liable to the employee `for his full wages from the time the demand for payment by the discharged or resigned laborer or employee was made, until the employer shall pay or tender payment of the amount due to such laborer or other employee', plus a reasonable attorney's fee (as amended [by Act 138 of 1936]; now LSA-R.S. 23:632)."