651 So.2d 943 (1995)
CAJUN BAG AND SUPPLY, Plaintiff-Appellant,
v.
O'Neal BAPTISTE, Defendant-Appellee.
No. 94-1218.
Court of Appeal of Louisiana, Third Circuit.
March 1, 1995.
*944 Kenneth O'Neil Privat, Crowley, for Cajun Bag & Supply.
David Russell Bankston, Lafayette, for O'Neal Baptiste.
Before PETERS, AMY and SULLIVAN, JJ.
AMY, Judge.
The issue in this appeal is whether Cajun Bag and Supply (hereafter Cajun Bag) owes worker's compensation benefits to O'Neal Baptiste, who injured himself on the job while engaged in horseplay.

FACTS
On June 15, 1993, Mr. Baptiste was employed as a loom operator with Cajun Bag, a bag manufacturer. Mr. Baptiste's work involved tending a loom machine, a device which weaves strapping for the sacks. Operation of the machine involves placing spools of yarn onto a rack called a creel. The operator threads the yarn so that it feeds from the spools resting on the creel into the loom machine. Additionally, he replaces spools as they become empty and moves boxes of yarn when necessary.
According to Mr. Baptiste's testimony, he injured his right shoulder around 2:00 P.M. on June 15, 1993, while attempting to replace a spool of thread on a creel. Mr. Baptiste explained that he stood on a stool to change a spool on top of the creel and that as he lifted the spool of thread, the stool rolled, and he lost his balance, causing him to fall backwards. Mr. Baptiste testified that he struck his buttocks and back on the floor and his right arm on a creel. Mr. Baptiste reported the injury to Mr. James Signorelli, his immediate supervisor. They reported the injury to Ms. Charmaine Martin, the human resources manager, who immediately brought Mr. Baptiste to receive medical attention from Dr. Roland Menard, the company general practitioner. Dr. Menard put Mr. Baptiste's right arm in a sling and told him to limit his work to light duty for a few weeks.
A week later, Mr. Baptiste informed Ms. Martin that his shoulder was bothering him and she arranged for him to obtain treatment from Dr. G. Gregory Gidman, the company orthopedist. Mr. Baptiste's initial visit to Dr. Gidman was on June 30, 1993. Dr. Gidman diagnosed the injury as a shoulder sprain and placed Mr. Baptiste on a no-work status. He recommended physical therapy, heat, and moisture.
Because Cajun Bag began to suspect that Mr. Baptiste's claim had been falsified, it retained Hub Enterprises, Inc., to investigate Mr. Baptiste's claim. On July 8, 1993, Ms. Darlene Cormier, a private investigator employed by Hub Enterprises, obtained a surveillance tape of Mr. Baptiste placing a *945 cover on the roof of his automobile without any limitations in his movements.
On July 16, 1993, claimant returned to Dr. Gidman. The medical records indicate that Mr. Baptiste told Dr. Gidman that he could not lift his infant son, cut his grass, or clean his car because the pain in his right shoulder was so debilitating. Dr. Gidman noted on his medical records that he considered Mr. Baptiste's complaints to be "magnified" and that there were "no objective findings of any abnormalities." Ms. Cormier obtained another surveillance tape of Mr. Baptiste while he was leaving Dr. Gidman's office. The tape depicts Mr. Baptiste raising his arms over his head and placing a gold chain around his neck.
Mr. Baptiste again returned to Dr. Gidman on July 23, 1993, at which time Dr. Gidman noted that Mr. Baptiste's "[s]ubjective complaints of pain appear to be in the extremes [sic] and are not substantiated anatomically by the nature of his injury, physical examination, or his radiological makeup." Because Dr. Gidman could find no anatomical or orthopedic explanation for Mr. Baptiste's incapacitating complaints, he released Mr. Baptiste to return to his full duties at work effective July 26, 1993.
On August 2, 1993, Mr. Baptiste sought medical treatment from Dr. Michel Heard, a physician of his own choice. Although electromyogram and nerve conduction studies performed on August 25, 1993, were normal, Dr. Heard placed Mr. Baptiste on a no-work status.
In early September, a Cajun Bag employee told Mr. Signorelli, who was Mr. Baptiste's supervisor, that Mr. Baptiste had injured his shoulder on June 15, 1993, while shadow boxing with Mr. Jason McClelland. Additionally, the same employee told Mr. Signorelli that employees Mr. Kerry Broussard and Ms. Gayla Casciano had witnessed the accident. After sworn statements were obtained from Mr. McClelland, Mr. Broussard, and Ms. Casciano that Mr. Baptiste was injured on June 15, 1993, while engaged in shadow boxing with Mr. McClelland, Cajun Bag terminated Mr. Baptiste's compensation benefits effective September 13, 1993, due to its belief that Mr. Baptiste's compensation claim had been falsified.
On September 20, 1993, Cajun Bag filed a notice of disputed claim for compensation. On December 14, 1993, O'Neal Baptiste reconvened seeking reinstatement of disability benefits and medical benefits. On January 26, 1994, Cajun Bag filed an amending and supplemental petition to recover the $1,639.44 in compensation benefits and $5,429.72 in medical benefits it had already paid.
The matter was heard by Worker's Compensation Hearing Officer Kellar on May 17, 1994, and judgment was entered against Cajun Bag on August 4, 1994.
In written reasons for the judgment, the hearing officer found that Mr. Baptiste was engaged in horseplay on June 15, 1993, and that as a result of this horseplay, he had aggravated a pre-existing injury. Although noting that LSA-R.S. 23:1031(C) precludes worker's compensation coverage when an employee is injured while engaging in horseplay, the hearing officer awarded benefits to Mr. Baptiste based on a long line of cases which have allowed employees injured while engaging in horseplay to receive worker's compensation benefits. She held that he was properly paid benefits from June 15, 1993, until September 8, 1993. Furthermore, she found that he was temporarily totally disabled until February 25, 1994 and was entitled to benefits until this date; therefore, she awarded him indemnity benefits of $182.16 per week from September 8, 1993 until February 25, 1994. From this judgment Cajun Bag appeals.
Cajun Bag alleges three assignments of error: that the hearing officer (1) incorrectly held that injuries due to horseplay were not excluded from worker's compensation coverage; (2) erred in finding Mr. Baptiste to be temporarily totally disabled; and (3) failed to award Cajun Bag $7,069.16 for medical expenses and compensation benefits paid to Mr. Baptiste to which he was not entitled.

HORSEPLAY
Although Mr. Baptiste testified that he was not engaged in horseplay at the time *946 of his injury, three of his co-workers testified that he hurt himself on June 15, 1993, while shadow boxing with Jason McClelland. Mr. McClelland testified that as he was walking back to his work station from putting something on his supervisor's desk, "O'Neal followed me, and he told me something else, and I told him something back. Then he kind of swung at me and I kind of ducked, kind of put up my fist; and he swung at me again, and that's when he hurt his shoulder. He said he pulled some muscles or something." Mr. McClelland further testified that he believed that Mr. Baptiste had hurt his shoulder at this time because Mr. Baptiste "grabbed his right shoulder with his left arm, and he kind of bent down a little bit."
The testimonies of Mr. Kerry Broussard, a weaving operator, and Ms. Gayla Casciano, a janitor, corroborated Mr. McClelland's version of the June 15, 1993 incident. Mr. Broussard testified that he saw Mr. McClelland bring papers to his supervisor's office and that, when he was walking back, Mr. Baptiste and Mr. McClelland began shadow boxing. Mr. Broussard stated that Mr. Baptiste "threw an arm. He went down holding his shoulder." According to Mr. Broussard, Mr. Baptiste told him a short time later "`Man, my shoulder is hurt.'" Ms. Casciano testified that after Mr. McClelland brought some papers to his supervisor's office, Mr. Baptiste approached Mr. McClelland and started swinging. After Mr. Baptiste threw a punch, she stated that he held his shoulder and exclaimed "`Oh, my shoulder.'"
In support of her finding that Mr. Baptiste had been engaged in horseplay on June 15, 1993, the hearing officer wrote that "[t]he court finds the testimony of claimants' [sic] co-employees to be more credible.... The testimony of claimants' [sic] co-employees leads this court to believe that the accident did not occur as he alleges.... The evidence, therefore, does not corroborate claimant's assertion of what occurred."
The factual findings of a hearing officer in a worker's compensation case are reviewed under the manifest error standard of review. Bruno v. Harbert Intern. Inc., 593 So.2d 357, 361 (La.1992). In order to set aside a factual finding, we must find from the record that a reasonable fact basis did not exist for the trial court's findings and that the findings are clearly wrong. Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993).
In this case, conflicting testimony was given regarding the cause of Mr. Baptiste's shoulder injury. Since only the finder of fact can be aware of the demeanor and variations in the voices of witnesses, findings based on the credibility of witnesses are accorded great deference on review. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). When the finder of fact is presented with conflicting testimony, his or her reasonable evaluations in credibility are not to be disturbed on appeal. Id. In the instant case, the hearing officer believed the testimony of Mr. Baptiste's co-employees rather than his explanation for his shoulder injury. On review we find that no documentary or objective evidence contradicts the accounts of Mr. Baptiste's co-employees and that their testimonies were consistent. We conclude that the trial court's decision to accept their testimony and reject Mr. Baptiste's testimony was reasonable. Therefore, we find no manifest error in the trial court's finding that Mr. Baptiste injured himself while engaged in horseplay.
We next examine the trial court's holding that, as a matter of law, personal injuries sustained during horseplay are compensable under the Worker's Compensation Act.
Before its 1989 revision, the Louisiana Worker's Compensation Act had no explicit exclusion of personal injuries sustained by employees engaged in horseplay during the course and scope of employment. A series of cases predating the 1989 amendments allowed compensation for such injuries under the rationale that, "during idle periods ... working men will engage in jocular activities with fellow employees" and that such activities are therefore in the course and scope of employment. Singleton v. Younger Brothers, Inc., 247 So.2d 273, 275 (La.App. 4th Cir.), writ denied, 249 So.2d 202 (La.1971).
*947 Louisiana Revised Statute 23:1031 was amended in 1989 by the addition of subsection C which provides as follows:
An injury by accident shall not be considered as having arisen out of the employment and is thereby not covered by the provisions of this Chapter if the injured employee was engaged in horseplay at the time of the injury.
This provision, effective January 1, 1990, was in effect on June 15, 1993, the date of Mr. Baptiste's injury.
As noted above, the hearing officer found that the incident occurred during horseplay between Mr. Baptiste and another employee. Even though Louisiana Revised Statutes 23:1031(C), as amended in 1989, clearly states that "[a]n injury by accident shall not be considered as having arisen out of the employment and is thereby not covered by the provisions of this Chapter if the injured employee was engaged in horseplay at the time of the injury," the hearing officer awarded benefits to Mr. Baptiste on the basis that Louisiana case law had established a jurisprudential exception to the horseplay exclusion (emphasis added).
We believe that the hearing officer's reliance on the jurisprudence which predated the 1989 amendment to LSA-R.S. 23:1031 was misplaced. Before the 1989 revision, LSA-R.S. 23:1031 not only failed to explicitly exclude coverage for injuries that resulted from horseplay but was also devoid of any mention of horseplay. In the absence of explicit statutory language excluding coverage for horseplay, the Louisiana courts were free to interpret LSA-R.S. 23:1031 to allow coverage for an injury resulting from horseplay as "arising out of" and "in the course of" employment. All Louisiana cases, including those relied on by the hearing officer, which have allowed an employee to receive worker's compensation benefits notwithstanding the fact that he was engaged in horseplay at the time of his injury were decided before the 1989 amendment to LSA-R.S. 23:1031. Singleton, supra; Favre v. Werk Press Cloth Mfg., 152 So. 694, 699 (La.App.Orl.1934); Schexneider v. General American Tank Car Corp., 5 La.App. 84, 88 (Orl.1926). Additionally, the Louisiana Supreme Court and this court have concluded that legislative amendments have the effect of overruling pre-amendment jurisprudence interpreting a statute when the statute, as amended, clearly and unambiguously precludes the result reached by the pre-amendment jurisprudence. Carriere v. Pee Wee's Equipment Co., 364 So.2d 555, 556-57 (La.1978); Domite v. Imperial Trading Co., Inc., 94-16 at p. 6 (La.App. 3d Cir. 8/3/94), 641 So.2d 715, 719. We therefore conclude that the cases which allowed a claimant employee who was injured while engaging in horseplay to receive worker's compensation benefits are no longer the law in Louisiana. To allow a claimant who was injured while engaging in horseplay to receive worker's compensation benefits "is contrary to and makes less effective, if not ineffective, the obvious intent of the legislature in adopting this statute." Domite, 94-16 at p. 6, 641 So.2d at 719. See also Lemoine v. Schwegmann Giant Supermarkets, 607 So.2d 708, 712 n. 1 (La.App. 4th Cir.), writ denied, 609 So.2d 258 (La.1992).
Mr. Baptiste was engaged in horseplay when he injured himself and is not entitled to worker's compensation benefits as a matter of law. Accordingly, we reverse the hearing officer's award of temporary total disability benefits and medical benefits.

CAJUN BAG'S CLAIM FOR REIMBURSEMENT
Cajun Bag seeks a money judgment against O'Neal Baptiste in the amount of $7,069.16 to obtain reimbursement for worker's compensation benefits which it paid because he was not entitled to receive them. Although this Court has jurisdiction to render judgment on any matter brought before a worker's compensation hearing officer under Article 5, Section 10 of the Louisiana Constitution, we may decline to consider the merits of a claim if we conclude that the tribunal below lacked the authority to adjudicate it. Rule 1-3, U.R.C.A. Thus, before we reach the merits of Cajun Bag's claim for reimbursement, we will consider whether the Office of Worker's Compensation was the proper tribunal before which Cajun Bag could assert its claim for reimbursement.
*948 Pursuant to Article 5, Section 16 of the Louisiana Constitution, the district courts are vested with original jurisdiction over all civil matters unless the Constitution provides otherwise or the Louisiana Legislature has "provided by law for administrative agency determinations in worker's compensation matters." The Louisiana Legislature has vested worker's compensation hearing officers with "exclusive jurisdiction over all claims or disputes arising out" of the Worker's Compensation Chapter. LSA-R.S. 23:1310.3(E) (emphasis added). LSA-R.S. 23:1310.3 provides that hearing officers have the authority to adjudicate claims for benefits and the controversion of entitlement to benefits; therefore, these matters are clearly "worker's compensation matters" which arise under the act. However, the worker's compensation act has no provision creating an action or providing relief to employers seeking reimbursement for compensation benefits paid to employees who were not entitled to receive them. We believe LSA-R.S. 23:1310.3 requires that a claim actually "arise out" of the Worker's Compensation Act, rather than merely relate to worker's compensation in general, for hearing officers to enjoy original jurisdiction over it. Because exceptions to the general rule that district courts are vested with original jurisdiction are to be narrowly construed, we will not read LSA-R.S. 23:1310.3 more broadly than its explicit language. State, Dept. of Social Services v. Shano, 93-607 (La.App. 5th Cir. 1/25/94), 631 So.2d 1263, 1265, writ denied, 94-0460 (La. 4/4/94), 635 So.2d 1112; Hawkins v. State through Dept. of Health, 613 So.2d 229, 234 (La.App. 1st Cir.1992). Additionally, we decline to increase the jurisdiction of the hearing officers beyond the scope of LSA-R.S. 23:1310.3, because Article 5, Section 16 requires the Louisiana legislature to enact a specific provision designating a claim as a "worker's compensation matter" before the district courts will be divested of jurisdiction over a claim. Otherwise, a claim for relief even one generally related to worker's compensationremains within the jurisdiction of the district courts.[1]
The Louisiana Legislature has not granted the hearing officer the authority to adjudicate Cajun Bag's claim by a specific provision in the worker's compensation act. Because the hearing officer lacked authority to consider Cajun Bag's claim for reimbursement, original jurisdiction over this claim remains in the district courts. As the hearing officer was without authority to adjudicate this claim, it is not barred by res judicata should Cajun Bag choose to pursue it in a court of competent jurisdiction, therefore; the interests of justice do not require us to consider the merits of Cajun Bag's claim for reimbursement.

DECREE
For the foregoing reasons, the hearing officer's determination that Mr. Baptiste was entitled to worker's compensation and medical benefits through September 8, 1993, and the hearing officer's judgment awarding Mr. Baptiste temporary total disability and medical benefits from September 8, 1993, until February 25, 1994, are reversed and vacated. The claims of Cajun Bag for reimbursement of temporary total disability and medical benefits are dismissed without prejudice. All costs are assessed to Mr. Baptiste.
REVERSED AND RENDERED.
NOTES
[1] In reaching our decision in this case, we have considered the applicability of LSA-R.S. 23:1101(D), which is a statutory exception to LSA-R.S. 23:1310.3(E)'s grant of jurisdiction to the worker's compensation hearing officers. LSA-R.S. 23:1101(D) provides that "[a]ny suit to recover amounts paid ... under the provisions of this Chapter ... in an action involving an employee who has or is receiving benefits under this Chapter seeking reimbursement ... for benefits paid or obligated to be paid under this Chapter shall be tried before a judge only." (emphasis added). Our determination that Cajun Bag's claim for reimbursement does not arise under the worker's compensation act necessarily means that LSA-R.S. 23:1101(D) does not control in this case. Nevertheless, because LSA-R.S. 23:1101(D) precludes the hearing officers from adjudicating claims for reimbursement which arise under the worker's compensation act, the rule of LSA-R.S. 23:1101(D) suggests a fortiori that claims for reimbursement which do not arise under the worker's compensation act are not within LSA-R.S. 23:1310.3(E)'s grant of jurisdiction to the worker's compensation hearing officers.